640

[No. 67708-0-I.   Division One.   February 19, 2013.]

THE STATE OF WASHINGTON, *Appellant*, v. KEVIN EUGENE
SLATTUM, *Respondent*.

642

*Mark K. Roe, Prosecuting Attorney,* and *Mary K. Webber* and *Seth A. Fine, Deputies,* for appellant.

*Jacqueline McMurtrie* and *Anna M. Tolin* (of *Univeristy of Washington Law Clinic—Innocence Project Northwest*), for respondent.

¶1 LAU, J. — RCW 10.73.170 provides for state-funded postconviction DNA (deoxyribonucleic acid) testing to certain felons currently serving a "term of imprisonment." Convicted sex offender Kevin Slattum moved for DNA testing after he completed his indeterminate minimum sentence prison time and while on community custody for life. The State opposed the motion, contending in part that the word "imprisonment" means the legislature intended to narrowly define eligibility for postconviction DNA testing only to felons actually serving a sentence in a jail or prison facility but not on community custody. The trial court granted Slattum's motion. Because the word "imprisonment" in RCW 10.73.170 is ambiguous, the rule of lenity requires us to construe this statute strictly against the State in favor of Slattum. We affirm the trial court.[1]

## FACTS

¶2 Kevin Slattum, an Innocence Project Northwest client, moved for postconviction DNA testing in Snohomish County Superior Court under RCW 10.73.170, which allows felons "currently . . . serving a term of imprisonment" to petition for such testing. RCW 10.73.170(1). Slattum filed his motion in June 2011 while serving an indeterminate life sentence for second degree rape of a child.[2] When Slattum

---

[1] Both parties filed motions on appeal. The State moved to supplement the record with a house bill report that summarized some proposed changes to RCW 10.73.170. Slattum agrees that RAP 10.4(c) permits parties to append such reports to their briefs when legislative history is at issue, and, thus, we grant the State's motion. The State also moved to strike Slattum's appendices to his response brief, consisting of (1) "Conditions, Requirements and Instructions" issued by the Department of Corrections and (2) documents pertaining to the conditions imposed by the Indeterminate Sentence Review Board. The State moved to strike Slattum's appendices because they were not part of the trial court record. Slattum responded with a motion to supplement the record with the appendices. Review of the disputed documents reveals that they are largely duplicative of materials contained in the trial court record, and we consider them only for that purpose. We deny the State's motion to strike.

[2] The facts underlying Slattum's conviction are fully discussed in his direct appeal challenging the conviction. *State v. Slattum*, noted at 117 Wn. App. 1009, 2003 WL 21267403, 2003 Wash. App. LEXIS 1116. The trial court sentenced

filed the motion, he had completed his minimum term of 102 months of confinement in prison and was serving the lifelong community custody portion of his sentence.

¶3 Slattum's community custody terms require that he remain under the control and jurisdiction of the Department of Corrections (DOC) and the authority of the Indeterminate Sentence Review Board (ISRB) for any time remaining between the date of release from total confinement and the expiration of the statutory maximum sentence. The sentencing court, DOC, and ISRB may impose community custody conditions. If an offender violates any condition or requirement of community custody, the ISRB may revoke the offender's release to community custody and impose sanctions, including confinement in prison for the remaining maximum term. Slattum's community custody terms require him to obey all laws and follow all DOC rules and regulations. Slattum must also comply with specific requirements relating to his conviction. Included are the requirements that Slattum

- Report to and be available for contact with his community corrections officer (CCO) and follow all of the CCO's verbal and written instructions;
- Reside in a location and under living arrangements approved by the CCO;
- Submit to searches of his person, residence, vehicle, and possessions whenever requested by the CCO;
- Remain within or outside geographic boundaries as directed;
- Obtain permission before leaving his county of residence;
- Obtain permission before leaving the state of Washington;
- Refrain from entering parks, playgrounds, schools, or any other place where children congregate;

Slattum to a term of imprisonment for a minimum of 102 months and a maximum of life and to a term of community custody for life if released before the statutory maximum sentence expired.

- Refrain from entering bars, taverns, casinos, or any other location where alcohol is the primary item for sale;

- Submit to random urinalysis, breathalyzer, and plethysmographic testing.

¶4 The State objected to Slattum's motion for post-conviction DNA testing. It claimed that RCW 10.73.170 applies only to felons currently serving a "term of imprisonment." According to the State, Slattum was ineligible for postconviction DNA testing because he was not physically confined in prison. The trial court granted Slattum's motion for DNA testing, concluding that his community custody status satisfied RCW 10.73.170's "term of imprisonment" requirement. In its oral ruling, the court explained:

> It seems to this court that to limit the access to DNA testing to those who are actually incarcerated is interpreting the statute too narrowly. It may be that an offender is no longer in total confinement, but, nevertheless, he or she is under the direct control of the Department of Corrections. And as I've already indicated, in fact, if he is then placed in total confinement because of a violation, he's given credit for time spent on community custody.
>
> In this particular case, the community custody is [p]otentially for the life of the defendant. He has severe restrictions and restraints placed on him, and he has affirmative duties under the community custody, and for any violation the defendant faces the possibility of total confinement.

Report of Proceedings (July 29, 2011) at 38.

¶5 The court's written findings establish in relevant part:

> 8. The defendant has served the minimum prison sentence and is on community custody subject to the conditions set out in Appendix A of the judgment and sentence. Those restraints include restrictions on travel, restrictions on certain people he may have contact with, a requirement that he participate in treatment, and that he is subject to searches from the Department of Corrections.

9. If the defendant violates any of the conditions of his community custody he may be returned to confinement.

10. RCW 10.73.170 requires that an offender seeking post-conviction DNA testing at government expense be serving a term of imprisonment. That statute does not define the term "imprisoned."

11. Pursuant to RCW 9.94A.030 "confinement" may be total or partial confinement.

12. Pursuant to RCW 9.94A.030, "community custody" is defined as "that portion of an offender's sentence of confinement in lieu of earned release time or imposed as part of a sentence under this chapter and served in the community subject to controls placed on the offender's movement and activities by the department."

13. Pursuant to RCW 9.94A.633(2)(f), an offender sentenced to an indeterminate sentence pursuant to RCW 9.94A.507 may be transferred to a more restrictive confinement status for a violation of community custody and will receive credit for time served while on community custody. The Department of Corrections makes no distinction between confinement in prison and community custody when calculating good time credit. The Department of Corrections treats an offender on community custody as in a quasi-confinement status. The very name "community custody" implies a custody status. An offender may no longer be in total confinement but nevertheless be under direct control of the Department of Corrections.

The court concluded in its written ruling that Slattum qualified for DNA testing:

> The defendant is serving a term of imprisonment within the meaning of RCW 10.73.170 because he is on community custody. The Legislature did not say that a petitioner must be incarcerated or totally confined. Rather, the Legislature chose a term which is broad enough to include someone who is currently serving a term of community custody.

¶6 The trial court denied the State's motion to stay DNA testing pending appeal. Because DNA testing subsequently occurred, the State concedes that the issue raised on appeal

is moot. However, the State argues that the trial court's application of RCW 10.73.170 to an offender serving a term of community custody is a matter of substantial public interest.

## ANALYSIS

### Mootness

¶7 The parties agree the issue here is moot because DNA testing occurred. The State argues we should nevertheless review this case because it involves matters of continuing and substantial public interest. Specifically, the State contends that (1) "[t]he trial court's interpretation of [RCW 10.73.170] to include persons who are on community custody greatly expands the plain language of the statute"; (2) the trial court's interpretation "could result in an expenditure of funds far greater than intended by the Legislature"; and (3) this issue is likely to recur given the large number of requests for assistance the Innocence Project receives each month.[3] Appellant's Br. at 8-9.

¶8 A case is moot "when it involves only abstract propositions or questions, the substantial questions in the trial court no longer exist, or a court can no longer provide effective relief." *Spokane Research & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 99, 117 P.3d 1117 (2005). However,

> [A court] may decide a moot issue if it involves matters of continuing and substantial public interest. To determine whether a case involves the requisite public interest, we consider (1) the public or private nature of the question presented, (2) the desirability of an authoritative determination to provide future guidance to public officers, and (3) the likelihood that the question will recur.

*Thomas v. Lehman*, 138 Wn. App. 618, 622, 158 P.3d 86 (2007) (citation omitted) (citing *In re Pers. Restraint of*

---

[3] Slattum argues the issue on its merits and does not refute the State's "continuing and substantial public interest" argument.

*Mines,* 146 Wn.2d 279, 285, 45 P.3d 535 (2002)). Mootness is a question of law, reviewed de novo. *Wash. State Commc'n Access Project v. Regal Cinemas, Inc.,* 173 Wn. App. 174, 204, 293 P.3d 413 (2013).[4]

■ ■ ¶9 We conclude these criteria support review in this case. This is a statutory interpretation question concerning the court's authority to require postconviction DNA testing at public expense. The public has a substantial interest in questions involving expenditure of public funds. *City of Seattle v. State,* 100 Wn.2d 232, 237, 668 P.2d 1266 (1983) (holding as an alternative ground for considering a challenge to an expired city ordinance that "we believe a case involving the public financing and limiting of campaign expenditures for political candidates is of such public importance there is 'continuing and substantial public interest' "). The question is likely to recur given the restrictive nature of community custody and the numerous requests for assistance received by the Innocence Project.[5] We conclude that the issue here warrants review as a matter of continuing and substantial public interest.

---

[4] The State cites two cases supporting its position. In *In re Cross,* 99 Wn.2d 373, 662 P.2d 828 (1983), our Supreme Court reviewed a moot question as an issue of continuing and substantial public interest. The case involved a judicial officer's authority to act under a statute and the adequacy of notice given to a mental health patient regarding grounds on which the city sought to return her to inpatient status. *Cross,* 99 Wn.2d at 375-77. The court explained that these questions were public in nature and because the approach the trial court took was procedurally more convenient than what our Supreme Court thought was required, the likelihood of recurrence was high. *Cross,* 99 Wn.2d at 377-78. Similarly, in *City of Seattle v. Johnson,* 58 Wn. App. 64, 66-67, 791 P.2d 266 (1990), we reviewed the constitutionality of a city ordinance as a matter of continuing and substantial public interest. We explained that the statute affected many areas of public behavior, the lower courts' decisions were inconsistent, and the likelihood of recurrence was high because the ordinance had not been amended since the action was filed. *Johnson,* 58 Wn. App. at 67.

[5] According to the Innocence Project Northwest Clinic's web site, the clinic receives 30 to 50 new requests for assistance each month. INNOCENCE PROJECT NW., http://www.law.washington.edu/clinics/IPNW/ (last visited Jan. 23, 2013). The web site does not specify which of those requests concern persons on community custody.

*RCW 10.73.170's Applicability to Offenders on Community Custody*

¶10 The sole issue on appeal is whether RCW 10.73.170 —which allows felons "currently . . . serving a term of imprisonment" to request postconviction DNA testing—applies to an offender serving the community custody portion of his or her sentence. The State argues that the statute unambiguously applies only to offenders confined in a jail or prison facility. Slattum responds that the plain meaning of "imprisonment" includes lesser forms of restraint, including community custody. He also contends that the legislature has limited the meaning of "imprisonment" in other contexts but chose not to do so in the context of postconviction DNA testing.

¶11 Statutory interpretation is a question of law we review de novo. *State v. Gray*, 174 Wn.2d 920, 926, 280 P.3d 1110 (2012). "In interpreting a statute, our fundamental objective is to ascertain and carry out the legislature's intent." *Gray*, 174 Wn.2d at 926. Statutory interpretation begins with the statute's plain meaning. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). We discern plain meaning "from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009). If a statute's meaning is plain on its face, we give effect to that plain meaning. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). Only if statutory language is ambiguous do we resort to aids of construction, including legislative history. *Armendariz*, 160 Wn.2d at 110-11. A provision is ambiguous if it is subject to more than one reasonable interpretation. *Engel*, 166 Wn.2d at 579.

¶12 As discussed above, RCW 10.73.170(1) provides:

A person convicted of a felony in a Washington state court *who currently is serving a term of imprisonment* may submit to the

court that entered the judgment of conviction a verified written motion requesting DNA testing, with a copy of the motion provided to the state office of public defense.

(Emphasis added.) The parties dispute the meaning of the term "imprisonment," which is not defined in RCW 10.73-.170 or in chapter 10.73 RCW's definitions section. Both parties argue that without a statutory definition, "imprisonment" must be given its conventional dictionary meaning. *See State v. Gonzalez*, 168 Wn.2d 256, 263, 226 P.3d 131 (2010) ("When a statutory term is undefined, the words of a statute are given their ordinary meaning, and the court may look to a dictionary for such meaning."). The State cites several dictionary definitions to argue that "imprisonment" means incarceration in a jail or prison facility, while Slattum cites dictionary definitions to argue that imprisonment includes forms of restraint other than incarceration in a traditional prison.

¶13 The dictionary-based plain meaning definitions proposed by the parties are unhelpful. For example, *Webster's Third New International Dictionary* 1137 (2002) defines "imprison" as "to put in prison : confine in a jail" or "to limit, restrain, or confine *as if* by imprisoning." (Emphasis added.) It describes "imprisonment" as "constraint of a person either by force or by such other coercion as restrains him within limits against his will." WEBSTER'S, *supra*, at 1137 (emphasis added). *Black's Law Dictionary* defines "imprisonment" as "[t]he act of confining a person, esp. in a prison" or "[t]he state of being confined; a period of confinement." BLACK'S LAW DICTIONARY 825 (9th ed. 2009). These definitions shed no light on the meaning of "imprisonment" as used in the statute at issue.

¶14 We next consider the State's argument that our courts have distinguished community custody from imprisonment. The State cites two cases for this proposition. In *In re Personal Restraint of Blackburn*, 168 Wn.2d 881, 885, 232 P.3d 1091 (2010), our Supreme Court considered the required degree of specificity the DOC must use in a notice of

violation before reclassifying an offender from community custody to total confinement. The court held, "[F]or DOC to lawfully reclassify an offender for *imprisonment* for a violation of an 'obey all laws' condition of community custody, the notice must allege the facts and legal elements that DOC would have to prove to show an offender did not obey all laws." *Blackburn*, 168 Wn.2d at 886-87 (emphasis added). The State argues that the court's use of the word "imprisonment" means it treated imprisonment the same as total confinement, thus distinguishing it from community custody. *Blackburn* is distinguishable because it did not address the critical question of whether imprisonment includes an offender released on community custody for purposes of postconviction DNA testing.

¶15 Similarly, the State argues that in *State v. Anderson*, 132 Wn.2d 203, 937 P.2d 581 (1997), our Supreme Court "rejected an argument that 'imprisonment' as that term was used in RCW 9.95.062(3) was interchangeable with 'confinement' as defined in RCW 9.94A.030(8)." Appellant's Br. at 15. *Anderson* is distinguishable because the statute at issue there expressly qualified the category of offenders eligible for jail time credit to offenders unable to obtain release. *Anderson*, 132 Wn.2d at 207-08. The statute at issue in *Anderson*, RCW 9.95.062(3), provided:

> "In case the defendant has been convicted of a felony, and has been *unable to obtain release pending the appeal* by posting an appeal bond, cash, adequate security, release on personal recognizance, or any other conditions imposed by the court, the time the defendant has been imprisoned pending the appeal shall be deducted from the term for which the defendant was sentenced, if the judgment is affirmed."

*Anderson*, 132 Wn.2d at 207-08 (emphasis added) (quoting RCW 9.95.062(3)). The court held, "RCW 9.95.062(3) authorizes jail time credit only if the defendant has been '*unable to obtain release . . . .*' (emphasis added)." *Anderson*, 132 Wn.2d at 208 (alteration in original). Defendant's release on bond to home detention disqualified him from jail time

credit. *Anderson*, 132 Wn.2d at 208. RCW 10.73.170 contains no similar qualifying language. *Blackburn* and *Anderson* are unpersuasive.

¶16 As noted above, we discern the meaning of imprisonment in the context of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. The SRA defines "community custody" as *"that portion* of an offender's sentence of confinement . . . served in the community subject to controls placed on the offender's movement and activities by the [DOC]." RCW 9.94A.030(5) (emphasis added). RCW 9.94A-.707 provides:

> (1) Community custody shall begin: (a) Upon completion of the term of confinement; or (b) at the time of sentencing if no term of confinement is ordered.
>
> (2) When an offender is sentenced to community custody, the offender is subject to the conditions of community custody as of the date of sentencing, unless otherwise ordered by the court.

¶17 The SRA defines "confinement" as "total or partial confinement." RCW 9.94A.030(8).

> "Partial confinement" means confinement for no more than one year in a facility or institution operated or utilized under contract by the state or any other unit of government, or, if home detention or work crew has been ordered by the court or home detention has been ordered by the department as part of the parenting program, in an approved residence, for a substantial portion of each day with the balance of the day spent in the community. Partial confinement includes work release, home detention, work crew, and a combination of work crew and home detention.

RCW 9.94A.030(35).

> "Total confinement" means confinement inside the physical boundaries of a facility or institution operated or utilized under contract by the state or any other unit of government for twenty-four hours a day, or pursuant to RCW 72.64.050 and 72.64.060.

RCW 9.94A.030(51).

¶18 Slattum's second degree rape of a child conviction is a class A felony that carries a maximum penalty of life imprisonment. RCW 9A.44.076(2); RCW 9A.20.021(1)(a). Calculation of a crime's statutory maximum penalty includes both time imprisoned and time on community custody. *State v. Sloan*, 121 Wn. App. 220, 221, 87 P.3d 1214 (2004); RCW 9.94A.505(5) ("a court may not impose a sentence providing for a term of confinement or community custody that exceeds the statutory maximum for the crime . . ."). Thus, the SRA calculation of Slattum's maximum sentence includes time in prison and time on community custody.

¶19 We also note that offenders serving indeterminate sentences, like Slattum, are subject to the provisions in chapter 9.95 RCW that govern indeterminate sentences.[6] These provisions demonstrate the restrictive nature of community custody. They define "community custody" as "that portion of an offender's sentence subject to controls including crime-related prohibitions and affirmative conditions from the court, the board, or the department of corrections based on risk to community safety, that is served under supervision in the community, and which may be modified or revoked for violations of release conditions." RCW 9.95.0001(2). Under an indeterminate sentence, any violation of community custody conditions subjects the offender to arrest, detention, and further sanctions, including possible revocation of community custody and return to jail. RCW 9.94A.507(6)(b); RCW 9.95.435(1)-(2), .425(1). The ISRB may "transfer the offender to a more restrictive confinement status to serve up to the remaining portion of the sentence, less credit for any period actually spent in community custody . . . ." RCW 9.95.435(1).

¶20 As the provisions quoted above show, Slattum faces potential sanctions for community custody violations, in-

---

[6] While neither party cited provisions or definitions from the statutes governing indeterminate sentences, those statutes apply here given that Slattum received an indeterminate life sentence.

cluding possible return to prison for the remainder of his maximum life sentence. If community custody is revoked, Slattum would be entitled to jail time credit for time served on community custody. Given the SRA's treatment of community custody as a restrictive component of an offender's sentence, the State offers no rationale to support its contention that RCW 10.73.170 excludes offenders, like Slattum, released to community custody.

¶21 In addition, various felony and misdemeanor sentencing provisions demonstrate that the legislature is clear when specifying that imprisonment means confinement in a particular location. For example, RCW 3.66.060, which governs district courts' criminal jurisdiction, provides in part:

> The district court shall have jurisdiction: (1) Concurrent with the superior court of all misdemeanors and gross misdemeanors committed in their respective counties and of all violations of city ordinances. It shall in no event impose a greater punishment than a fine of five thousand dollars, or *imprisonment for one year in the county or city jail* as the case may be, or both such fine and imprisonment, unless otherwise expressly provided by statute.

(Emphasis added.) Similarly, RCW 9A.20.021(2), establishing the maximum sentences for gross misdemeanors committed on or after July 1, 1984, states:

> Every person convicted of a gross misdemeanor defined in Title 9A RCW shall be punished by *imprisonment in the county jail for a maximum term fixed by the court of up to three hundred sixty-four days*, or by a fine in an amount fixed by the court of not more than five thousand dollars, or by both such imprisonment and fine.

(Emphasis added.) *See also* RCW 9.92.090 (persons convicted of crimes involving fraud or intent to defraud who have two prior felony convictions "shall be punished by imprisonment *in a state correctional facility* for life" (emphasis added)); RCW 74.08.331(1) (persons convicted of

welfare fraud "shall be punished by imprisonment *in a state correctional facility* for not more than fifteen years"); RCW 29A.04.079 ("infamous crimes" punishable by "death in the state penitentiary or imprisonment *in a state correctional facility*" (emphasis added)). The legislature is also clear when specifying that "term of imprisonment" means confinement in a particular location. *See* RCW 9.98.010(1) (providing for right to request disposition of other pending charges "[w]henever a person has entered upon a *term of imprisonment in a penal or correctional institution of this state . . .*" (emphasis added)); RCW 9.100.010 art. III(a) (under Interstate Agreement on Detainers, a person who "has entered upon a *term of imprisonment in a penal or correctional institution* of a party state" may request final disposition of criminal charges (emphasis added)).

¶22 Unlike the statutes noted above, "term of imprisonment" in RCW 10.73.170 is not qualified by specific location. The legislature is presumed to know the statutory scheme. *Bishop v. City of Spokane*, 142 Wn. App. 165, 171, 173 P.3d 318 (2007). Because courts should assume the legislature " 'means exactly what it says,' " the absence of specific location in RCW 10.73.170 indicates that the legislature did not intend to limit RCW 10.73.170's reach to offenders confined "in a jail or prison facility."[7] *State v. Delgado*, 148 Wn.2d 723, 727, 63 P.3d 792 (2003) (quoting *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 964, 977 P.2d 554 (1999)); Appellant's Br. at 15. "Where the Legislature omits language from a statute, intentionally or inadvertently, this court will not read into the statute the language that it believes was omitted." *State v. Moses*, 145 Wn.2d 370, 374, 37 P.3d 1216 (2002). If the legislature had

---

[7] The State argues that the statutes discussed above—qualifying the term "imprisonment" with language specifying location—"clearly signal[ ] the [legislature's] intent that the term 'imprison' means confinement in a jail or prison facility." Appellant's Br. at 15. But the State ignores the well-settled statutory construction rule requiring us not to "read into the statute the language that [we] believe[ ] was omitted." *State v. Moses*, 145 Wn.2d 370, 374, 37 P.3d 1216 (2002). The legislature omitted such limiting language in RCW 10.73.170.

intended to limit "term of imprisonment" in RCW 10.73.170 to incarceration in a penal institution, it knew how to say it, as the statutes noted above demonstrate.[8]

¶23 In *State v. Anderson*, 151 Wn. App. 396, 403, 212 P.3d 591 (2009), the State similarly argued that "imprisonment" meant physical confinement in a prison or jail. The defendant argued that "imprisonment" meant "confinement" and thus included electronic home monitoring (EHM) because the SRA and case law defined "EHM" as partial confinement. *Anderson*, 151 Wn. App. at 403. While concluding that the term was ambiguous given the parties' competing authority, we noted that the defendant's interpretation was more persuasive than the State's, in part because the statute at issue (RCW 46.20.342) did not limit imprisonment to confinement in a particular location:

> Moreover, various sentencing provisions for gross misdemeanors demonstrate that the legislature is clear when specifying that "imprisonment" means confinement in a particular location. . . . Unlike RCW 3.66.060 and RCW 9A.20.021(2), "imprisonment" in RCW 46.20.342 is not modified by the words "in the county or city jail" or "in the county jail." Because courts should assume that the legislature " 'means exactly what it says,' " the absence of similar language in RCW 46.20.342(1)(a) indicates that the legislature intended to allow the trial courts to continue exercising their historical discretion by converting all or part of a term of imprisonment to EHM.

*Anderson*, 151 Wn. App. at 404-05 (footnote omitted). Similarly, RCW 10.73.170 contains no language limiting imprisonment to confinement in a jail or prison. The absence of limiting language in RCW 10.73.170 may indicate that the legislature intended to allow offenders like Slattum on community custody to petition for DNA testing.

¶24 The State cites no controlling law limiting term of imprisonment to a jail or prison facility for purposes of the

---

[8] If the legislature had intended to specify location, it could also have used the definition of "total confinement" noted above.

postconviction DNA testing statute. Nothing in the statute itself supports that contention. The parties cite competing legislative history,[9] but we discern no evidence of legislative intent to exclude the entire category of offenders serving the community custody portion of their felony sentences merely because they are not physically incarcerated in a prison facility. For the reasons discussed above, Slattum's interpretation of imprisonment in RCW 10.73.170 is more persuasive than the interpretation advanced by the State.[10] But even so, the parties' competing authority and plain meaning arguments demonstrate the ambiguity in the word "imprisonment." Because we conclude that "imprisonment" in RCW 10.73.170 is ambiguous, the rule of lenity applies, dictating a statutory construction most favorable to Slattum. *See State v. Jacobs*, 154 Wn.2d 596, 601, 115 P.3d 281 (2005) ("If a statute is ambiguous, the rule of

---

[9] The parties dispute the legislative history's implications. RCW 10.73.170 was amended in 2001. Prior to the amendment, the statute provided that "a person in this state who has been sentenced to *death or life imprisonment without possibility of release or parole*" may request DNA testing. Former RCW 10.73.170 (2000) (emphasis added). The 2001 amendment changed the language to its current form: "A person convicted of a felony in a Washington state court who *currently is serving a term of imprisonment*" may request DNA testing. RCW 10.73.170(1) (emphasis added). "[A] change in statutory language usually creates a presumption of a change in legislative intent . . . ." *State v. Rhodes*, 58 Wn. App. 913, 919, 795 P.2d 724 (1990). The change in language may indicate intent to broaden the class of persons eligible to petition for DNA testing because a sentence of death or life imprisonment without possibility of release necessarily includes only persons physically in jail or prison, but "currently . . . serving a term of imprisonment" may include more than just incarcerated persons.

Both the house and senate bill reports mention "incarcerated" persons. *See* S.B. Rep. on Substitute S.B. 5896, 57th Leg., Reg. Sess. (Wash. 2001) ("Innocent persons are presently incarcerated for crimes they did not commit. . . . The substitute [bill] provides the appropriate mechanism to ensure that DNA testing can take place to determine if innocent persons are presently incarcerated for crimes they did not commit. This is limited in scope to control the costs."); H.B. Rep. on Substitute S.B. 5896, 57th Leg., Reg. Sess. (Wash. 2001) ("Permits certain incarcerated felons to request postconviction [DNA] testing under certain circumstances. . . . This bill expands current law to include incarcerated felons."). But the final bill report does not mention incarceration and merely summarizes the bill as applying to "currently imprisoned" felons. 2001 Final Legislative Report, 57th Wash. Leg., at 218. We conclude the legislative history sheds no light on whether a person serving the community custody portion of his or her sentence is currently serving a "term of imprisonment" for purposes of RCW 10.73.170.

[10] We discern no clear legislative intent in support of either party's contentions.

lenity requires us to interpret the statute in favor of the defendant absent legislative intent to the contrary.").

¶25 The State argues that the rule of lenity does not apply here because RCW 10.73.170 "is procedural, and does not provide for any criminal sanctions." Appellant's Reply Br. at 3. The State cites no Washington authority limiting the use of the rule of lenity to statutes that may result in criminal convictions. No Washington authority limits its application here.

¶26 Washington courts have historically applied the rule when interpreting statutes that do not provide for criminal sanctions. In *In re Personal Restraint of Greening*, 141 Wn.2d 687, 698, 9 P.3d 206 (2000), our Supreme Court applied the rule of lenity as an alternative ground to accept the defendant's interpretation of RCW 10.73.100, which provides exceptions to the one-year time bar for personal restraint petitions. Specifically, the court considered RCW 10.73.100(6), which provides that the one-year time bar does not apply to a petition or motion based on the ground that "[t]here has been a significant change in the law . . . ." The State claimed this exemption should apply only to a petitioner's *first* collateral attack following a change in the law and only when that change takes place *after* the initial year. *Greening*, 141 Wn.2d at 698. The court rejected the State's argument "[f]or several reasons": (1) the statutory language did not support the State's reading; (2) there were no policy reasons to read a successive petition bar into RCW 10.73.100(6); and (3) even if the State's alternative construction were reasonable, "*the rule of lenity would require resolving the alleged ambiguity in the petitioner's favor.*" *Greening*, 141 Wn.2d at 698.

¶27 Relevant to Slattum's case, our appellate courts have also applied the rule of lenity in the community custody/probation/postconviction context. In *State v. Parent*, 164 Wn. App. 210, 267 P.3d 358 (2011), we considered RCW 9.95.210, which governs imposition of probationary sentences. The statute provides in relevant part:

[I]n granting probation, the superior court may suspend the imposition or the execution of the sentence and may direct that the suspension may continue upon such conditions and for such time as it shall designate, not exceeding the maximum term of sentence or two years, whichever is longer.

RCW 9.95.210(1)(a). We found the statute ambiguous with respect to the maximum length of probationary sentence to which a defendant who received consecutive terms of imprisonment could be sentenced. *Parent*, 164 Wn. App. at 213-14. Thus, we applied the rule of lenity:

The rule of lenity requires the court to construe a statute strictly against the State in favor of the defendant "[w]here two possible constructions are permissible." *Because the statute is ambiguous, it must be construed in Parent's favor.* Accordingly, the trial court erred in imposing consecutive probationary sentences.

*Parent*, 164 Wn. App. at 213-14 (emphasis added) (alteration in original) (footnote and internal quotation marks omitted) (quoting *Staats v. Brown*, 139 Wn.2d 757, 769, 991 P.2d 615 (2000)).

¶28 In *State v. Davis*, 160 Wn. App. 471, 248 P.3d 121 (2011), Division Two considered whether a defendant was entitled to credit for time served while out in the community serving part of his drug offender sentencing alternative (DOSA) sentence. The relevant statute provided:

An offender who fails to complete the special drug offender sentencing alternative program or who is administratively terminated from the program shall be reclassified to serve the unexpired term of his or her sentence as ordered by the sentencing court and shall be subject to all rules relating to earned release time. An offender who violates any conditions of supervision as defined by the department shall be sanctioned. Sanctions may include, but are not limited to, reclassifying the offender to serve the unexpired term of his or her sentence as ordered by the sentencing court. If an offender is reclassified to serve the unexpired term of his or her sentence, the offender shall be subject to all rules relating to earned release time.

Former RCW 9.94A.660(5) (2002). The statute was silent on whether time spent in the community serving a DOSA counts toward credit for time served. *Davis*, 160 Wn. App. at 477. The court held, "As Davis was serving part of his sentence on community custody, the court cannot sentence him to serve that time again. *And even if the statutory language is ambiguous, the rule of lenity requires this court to construe the statute in Davis's favor.*" *Davis*, 160 Wn. App. at 477 (emphasis added).

¶29 In *In re Sentence of Kindberg*, 97 Wn. App. 287, 983 P.2d 684 (1999), we applied the rule of lenity as an alternative ground to construe two statutes in the defendant's favor. The statutes at issue—RCW 9.94A.120(9)(a) and RCW 9.94A.190(3)—addressed when defendants must serve all terms of confinement in the custody of DOC and when the court must sentence offenders to community placement rather than community supervision. We explained:

> Examination of the language of the two statutes does not resolve the question presented. The DOC argues that because Kindberg was required under RCW 9.94A.190(3) to serve all her terms of confinement in the custody of the DOC, and because her King County sentence was for a drug offense, the court was required to impose a one-year term of community placement under RCW 9.94A.120(9)(a). Kindberg argues that community supervision on her four-month King County sentence was authorized by RCW 9.94A.383, and that RCW 9.94A.120(9)(a) does not apply because she was sentenced by King County to the custody of the DOC not because of the King County drug offense, but rather because the requirement of RCW 9.94A.190(3) was triggered by the concurrent Clallam County DOC sentence. Both interpretations of the relevant statutes are reasonable.

*Kindberg*, 97 Wn. App. at 290-91. We found that the statutes, when read together and applied to the defendant's particular situation, were ambiguous. *Kindberg*, 97 Wn. App. at 291. We found *Kindberg*'s interpretation more

convincing after considering legislative history. *Kindberg*, 97 Wn. App. at 292-94. We also concluded, "Finally, we note that *where two criminal statutes, when read together, are susceptible to more than one reasonable, but irreconcilable, interpretation, the rule of lenity applies. Under that rule, we must strictly construe the statutes in favor of the defendant.* Our construction is consistent with the rule." *Kindberg*, 97 Wn. App. at 294 (emphasis added) (citations omitted).

¶30 We note also that underpinning the State's position on this issue is its prediction that allowing persons on community custody to petition for DNA testing would cause unreasonable expenditure of public funds. But the State ignores the statute's strict substantive requirements.

> Read as a whole, the statute provides a means for a convicted person to produce DNA evidence that the original fact finder did not consider, whether because of an adverse court ruling, inferior technology, or the decision of the prosecutor and defense counsel not to seek DNA testing prior to trial.

*State v. Riofta*, 166 Wn.2d 358, 366, 209 P.3d 467 (2009). As our Supreme Court noted in *Riofta*, "In contrast to the statute's lenient procedural requirements, *its substantive standard is onerous.*" *Riofta*, 166 Wn.2d at 367 (emphasis added).

> The legislature's use of the word "innocence" indicates legislative intent to restrict the availability of postconviction DNA testing to a limited class of extraordinary cases where the results could exonerate a person who was wrongfully convicted of a crime.
>
> [The statute's] purpose is to provide a remedy for those who were wrongly convicted *despite* receiving a fair trial. The inquiry therefore properly focuses on petitioner's innocence.

*Riofta*, 166 Wn.2d at 369 n.4 (citation omitted).

¶31 The statute imposes the following substantive requirements:

The motion shall:

(a) State that:

(i) The court ruled that DNA testing did not meet acceptable scientific standards; or

(ii) DNA testing technology was not sufficiently developed to test the DNA evidence in the case; or

(iii) The DNA testing now requested would be significantly more accurate than prior DNA testing or would provide significant new information;

(b) Explain why DNA evidence is material to the identity of the perpetrator of, or accomplice to, the crime, or to sentence enhancement.

RCW 10.73.170(2). Whether incarcerated in prison or serving the community custody portion of the sentence, a petitioner must meet these strict requirements before a court grants the request for DNA testing.

## CONCLUSION

¶32 Because the word "imprisonment" in RCW 10.73.170 is ambiguous, the rule of lenity requires us to construe this statute strictly against the State in favor of Slattum. We affirm the trial court.

GROSSE and APPELWICK, JJ., concur.

Review denied at 178 Wn.2d 1010 (2013).