IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32114-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEAN L. ANDERS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Dean Anders appeals his conviction for first degree assault with a

deadly weapon. He argues his public trial rights were violated when the parties

registered their respective preemptory challenges on paper. Anders also appeals his

sentence. He contends the trial court failed to entertain his request for an exceptional

sentence. Based on Supreme Court precedence, we reject Anders' arguments and

confirm his conviction and sentence.

## FACTS

In March 2013, the accused Dean Anders and victim Richard Burt resided in a

homeless encampment in People's Park, Spokane. Anders occupied his tent with his

girlfriend, Jacqueline Stokes. Burt inhabited a nearby tent. John Hill lived in a tent one

hundred yards from Anders' and Burt's abodes.

The prosecution arises from a night attack on Richard Burt on March 6, 2013. After the attack, Burt retreated to his tent and called the police the following morning. Burt suffered multiple injuries from the assault, including a broken nose, fractured skull, three spine fractures, two fractured ribs, head lacerations and bruising.

Dean Anders' codefendant, John Hill, testified at trial that he heard screaming while at his campsite during the evening of March 6, 2013. He believed the screaming emanated from Dangerous Debbie Do, who previously destroyed his tent in a drunken rage. Before hearing the screams, Hill heard someone walking near his tent and muttering: "I'm going to kill you, you mother fucker. I'm going to get you." 4 Verbatim Report of Proceedings (VRP) (Oct. 28, 2013) at 697. Hill heard the horrible screams for about five minutes and then perceived a person racing down a trail. The person disappeared into the dark. During his trial testimony, Hill denied attacking and even seeing Burt that night.

Dean Anders admitted he struck Richard Burt on March 6, 2013. He contended that he acted in defense of himself and his girlfriend, Jacqueline Stokes. According to Anders, he and Stokes slept in their tent until one o'clock in the morning when Richard Burt woke him. Burt screamed and yelled outside Anders' tent door. Anders dressed. Burt was drunk. Stokes, while inside the tent, cursed Burt. Burt, in return, said: "Fuck you, bitch, I'm going to kill you" as he put his foot through the front door of the tent and

2

pulled on the top of the tent. 4 VRP (Oct. 28, 2013) at 618. Anders grew frightened and wanted to protect Stokes. Anders believed Burt killed someone before, a belief that contributed to Anders' fear. Burt had previously told Anders of the former's conviction for voluntary manslaughter. Anders knew of Burt's reputation for aggressiveness.

According to Dean Anders, Richard Burt entered the tent and attacked Jacqueline Stokes. In response, Anders struck Burt in the chest with his shoulder and knocked Burt out of the tent. The two men then wrestled on the ground. Anders then remarked: "Richard, go home. You're drunk." 4 VRP (Oct. 28, 2013) at 624. Burt fled into the woods, where Anders heard Burt scream he was going to kill Anders and Stokes.

Richard Burt, while still yelling, returned to Dean Anders' tent. Anders exited the tent. Burt lunged at Anders and cut Anders' arm. Anders concluded that Burt possessed a knife. Anders grabbed a framing hammer to protect himself and Stokes. When Burt charged a second time, Anders wrestled Burt to the ground and repeatedly struck Burt's back with the hammer. When Burt reached for Anders, Anders struck him in the hands with the hammer.

According to Dean Anders, during his struggle with Richard Burt, he grew winded from asthma and suffered pain from his degenerative disc disease. Anders knew he must quickly act to prevent Burt from overpowering him. Anders swung the hammer at Burt's neck and knocked him down. Burt rose from the ground, and Anders, in fear for his life, struck Burt's knees with the hammer. Burt remained on the ground, and Anders returned

3

to his tent. During trial testimony, Anders denied striking Burt on the top of the head with the hammer. He claimed Burt's head injuries resulted from Burt running into a tree.

## PROCEDURE

The State of Washington charged Dean Anders and John Hill with first degree assault with a deadly weapon, a framing hammer with a waffle head. The State tried Anders and John Hill together. During the jury selection process, Anders and the State exercised their peremptory challenges silently on a sheet of paper, which was filed after trial with the court clerk.

The trial court instructed the jury on self-defense. The jury convicted Dean Anders, but acquitted John Hill.

The trial court conducted a sentencing hearing, during which Richard Burt, Burt's fiancée Carla Swift, and Dean Anders spoke. The State requested the court sentence Anders for two hundred and forty months and impose $10,849.76 in restitution with the option of later adding to the restitution if Burt incurred more medical expenses. Burt requested a sentence of one year for every time Anders hit him, which, according to the State, would be a sentence of thirty-five years.

At the sentencing hearing, Dean Anders requested an exceptional reduced sentence of eighty-four months. To support the low sentence, Anders offered two reasons authorized under RCW 9.94A.535: (1) Anders acted in self-defense and (2) Burt was the initial aggressor. At the conclusion of the hearing, the trial court stated:

4

I, of course, have to honor the jury's decision.

I will say that I—I don't know that I will ever know exactly what happened out there. And I know that you have claimed all along that this was self-self-defense. And I'm not necessarily going to comment on the facts here. But the law does allow a person to defend themselves. And, of course, if you were being attacked, if you feared for your safety or your life, you're allowed to defend yourself.

The assault on Mr. Burt, though, was very, very significant and severe.

. . . .

And even if you were in fear for your safety, in fear for your life, the—the injuries were so significant that it's difficult to fathom, you know, exactly what—what went on up there and what happened. And I—and I recall the state making a very—fairly significant case with regard to the—where the injuries occurred and—and that sort of a thing.

. . . .

But again, this—this was a very significant assault. And I know the state is asking for the high end, and I know Mr. Burt would like more than the standard sentence range even allows. I'm going to impose 180 months, and that's about 15 years plus the enhancement of 24. There's no magic to my sentence here other than, Mr. Anders, I know you're—you're tearful. I can't tell if you're remorseful. You've apologized . . .

. . . but I don't really sense that you're taking real responsibility for it. And that's okay. You don't—you don't have to do that.

5 VRP (Nov. 15, 2013) at 859-62. The trial court sentenced Anders to a standard range

sentence of two hundred and four months' confinement and awarded $10,849.76 in

restitution.

The judgment and sentence entered by the trial court included a marked box next

to the statement: "The defendant waives any right to be present at any restitution hearing

(sign initials): _____." Clerk's Papers (CP) at 49. Also, section

2.2 of the criminal history section of the judgment and sentence, below the list of Anders'

5

prior criminal convictions, read: "*DV: Domestic Violence was pled and proved." CP at 44. This language also appeared in section 2.1 (current offenses). Section 2.3 of the sentencing data section, following a box to enter information about the offender score and seriousness level of the charged crime, stated:

> *(F) Firearm, (D) Other deadly weapons, (V) VUCSA in a protected zone, (RPh) Robbery of a pharmacy, (VH) Vehicular Homicide, See RCW 46.61.520, (JP) Juvenile present, (CSG) criminal street gang involving minor, (AE) endangerment while attempting to elude, (ALF) assault law enforcement with firearm, RCW 9.94A.533(12), (P16) Passenger(s) under age 16.

CP at 45.

In a later order, the trial court amended the judgment and sentence to declare $10,865.55 as the amount owing in restitution. The order noted: "no further restitution will be ordered." CP at 75. The amended restitution amount is $15.79 more than the original restitution amount. The amended order does not explain the added amount.

## LAW AND ANALYSIS

### Public Trial Right

On appeal, Dean Anders contends that the trial court erred in conducting the peremptory challenge portion of the jury selection process mutely by paper. The State responds that selection of a jury by silent peremptory challenges does not implicate the right to a public trial. Based on Supreme Court precedence, we hold the preemptory challenge process did not violate Anders' public trial right.

Public trial rights are bestowed by sections 10 and 22 of article I of the Washington Constitution, which protect both the defendants' right to have the public present, and the public's right to an open trial. *State v. Love*, 183 Wn.2d 598, 604-05, 354 P.3d 851 (2015), *petition for cert. filed*, 84 U.S.L.W. 3441 (U.S. Feb. 8, 2016) (No. 15-1007). A criminal defendant has a right to a "speedy public trial" under section 22, and section 10 guarantees to the public that "[j]ustice in all cases shall be administered openly." These provisions serve complementary and interdependent functions in assuring the fairness of our judicial system. *State v. Bone-Club*, 128 Wn.2d 254, 259, 906 P.2d 325 (1995).

When a defendant asserts that the trial court breached his public trial right, we first ask if the right attached to the discrete procedure during trial that the defendant challenges. *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012). We next ask whether the trial court closed the courtroom. *State v. Love*, 183 Wn.2d at 605. Finally, we ask if the closure was justified. *State v. Smith*, 181 Wn.2d 508, 513, 334 P.3d 1049 (2014).

*State v. Love* controls Dean Anders' public trial rights assignment of error. In *Love*, the Washington high court noted that the public trial right attaches to jury selection, including for cause and peremptory challenges, but the court held that written peremptory challenges do not constitute a closure. *Love*, 183 Wn.2d at 607. The court reasoned:

No. 32114-2-III
*State v. Anders*

Although Love argues for a broad rule that all peremptory challenges must be spoken aloud, written peremptory challenges are consistent with the public trial right so long as they are filed in the public record. Spoken peremptory challenges certainly increase the transparency of jury selection, but there are still legitimate methods of challenging jurors in writing, like the practice here, that do not amount to a courtroom closure because they are made in open court, on the record, and subject to public scrutiny.

*Love*, 183 Wn.2d at 607.

### Exceptional Sentence

Dean Anders contends that the trial court failed to consider on the record his request for an exceptional sentence below the standard range. He asks for a resentencing. The State responds that the trial court considered Anders' request for an exceptional sentence. We agree with the State.

The trial court may impose an exceptional sentence below the standard range if it finds mitigating circumstances by a preponderance of the evidence. RCW 9.94A.535(1). These mitigating circumstances include:

> (a) To a significant degree, the victim was an initiator, willing participant, aggressor, or provoker of the incident.
> . . . .
> (c) The defendant committed the crime under duress, coercion, threat, or compulsion insufficient to constitute a complete defense but which significantly affected his or her conduct.

RCW 9.94A.535(1). A failed self-defense claim may qualify as a mitigating factor under RCW 9.94A.535(1)(c). *State v. Pascal*, 108 Wn.2d 125, 137, 736 P.2d 1065 (1987).

RCW 9.94A.585(1) declares: "A sentence within the standard sentence range . . .

8

for an offense shall not be appealed." Based on this statute, a sentence within the standard range is not subject to appellate review. *State v. Ammons*, 105 Wn.2d 175, 182, 713 P.2d 719, 718 P.2d 796 (1986). The requirement that a trial court "set forth the reasons for its decision in written findings of fact and conclusions of law" is limited by the legislature to sentences outside the standard sentence range. RCW 9.94A.535. The effect of a standard range sentence is to create a presumption that the court properly exercised its discretion. *Ammons*, 105 Wn.2d at 183.

Despite this nearly uncompromising rule, a defendant may appeal the procedure the trial court followed when imposing a sentence. *State v. Knight*, 176 Wn. App. 936, 957, 309 P.3d 776 (2013), *review denied*, 179 Wn.2d 1021, 318 P.3d 279 (2014). While no defendant is entitled to an exceptional sentence below the standard range, every defendant is entitled to ask the trial court to consider such a sentence and to have the alternative actually considered. *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1138 (2005). Failure to consider an exceptional sentence is reversible error. *State v. Grayson*, 154 Wn.2d at 342.

When a defendant has requested an exceptional sentence, our review is limited to circumstances when the trial court refused to exercise discretion at all or relied on an impermissible basis for refusing to impose an exceptional sentence below the standard range. *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997). An impermissible basis for declining a request for an exceptional sentence includes race, sex,

9

or religion. *Garcia-Martinez*, 88 Wn. App. at 330. A trial court may consider such subjective factors as problems related to a particular offender, the offender's social situation, and the impact on the community when imposing a sentence. *State v. Osman*, 157 Wn.2d 474, 482, 139 P.3d 334 (2006). A court refuses to exercise its discretion if it refuses categorically to impose an exceptional sentence below the standard range under any circumstances. *Garcia-Martinez*, 88 Wn. App. at 330.

*State v. Grayson*, 154 Wn.2d 333 (2005), illustrates a trial court's categorical refusal to impose an exceptional sentence. John Grayson requested a Drug Offender Sentencing Alternative (DOSA) as part of his sentence for delivery of crack cocaine, but the trial court denied the request stating:

> The motion for a DOSA . . . is going to be denied. *And my main reason for denying [the DOSA] is because of the fact that the State no longer has money available to treat people who go through a DOSA program.*
> So I think in this case if I granted him a DOSA it would be merely to the effect of it cutting his sentence in half. I'm unwilling to do that for this purpose alone. There's no money available. He's not going to get any treatment; it's denied.

*Grayson*, 154 Wn.2d at 337 (emphasis in original) (alterations in original). Our Supreme Court held that the trial court abused its discretion when it refused to impose a DOSA sentence because it failed to consider a statutorily authorized sentencing scheme, regardless of its suitability for the particular defendant.

Dean Anders' trial court did not categorically refuse to exercise its discretion by

10

sentencing Anders within the standard range. The trial court gave no indication it would deny all requests for exceptional sentences below the standard range. The court did not rely on an impermissible basis in denying his request for an exceptional sentence. The trial court listened to both parties and the victim, recognized that Dean Anders raised a self-defense claim, identified the severity of the victim's injuries, conceded it cannot determine the exact events, and imposed a standard range sentence. The trial court emphasized the severity of the assault and the victim's injuries.

Dean Anders complains that the trial court impermissibly based its decision on his disproportionate use of force in self-defense. Nevertheless, proportionality of force is not an impermissible basis for denying an exceptional sentence.

Dean Anders argues that the trial court abused its discretion by not declaring on the record its reasons for rejecting his exceptional sentence request. We disagree. The trial court mentioned the intensity of Dean Anders' attack and the severity of Richard Burt's injuries as reasons. The trial court was not required to dictate every factual and legal justification for denying Anders' request for an exceptional sentence.

Dean Anders relies on *State v. Hampton*, 107 Wn.2d 403, 409, 728 P.2d 1049 (1986), which held that the trial court must give some reason on the record as to rejecting a defendant's request so that this court may review the decision. Nevertheless, *Hampton* dealt with bail forfeiture and not a discretionary decision to impose an exceptional sentence. No Washington case specifically requires on the record dictation of the reasons

11

for denying a request for an exceptional sentence. The legislature intended to prevent excessive review of standard range sentences.

Scrivener Errors

Dean Anders contends that his judgment and sentence contains two scrivener errors that should be corrected on remand. The first error is a checked box that waives his right to be present at any restitution hearing. The State agrees that the judgment and sentence incorrectly indicated that Anders waived his right to be present at restitution hearings. The State argues that the assignment of error is moot because Anders attended the hearing when the trial court imposed restitution and an order states that "no further restitution will be ordered." CP at 75.

Appellate courts may remand a case solely for correction of a scrivener's error in a judgment and sentence in order to ensure that the document accurately reflects the sentence the trial court intended. *State v. Healy*, 157 Wn. App. 502, 516, 237 P.3d 360 (2010). Nevertheless, this court generally declines reviewing an assignment of error when the issue presented is moot. *In re Cross*, 99 Wn.2d 373, 377, 662 P.2d 828 (1983); *In re Det. of R.R.*, 77 Wn. App. 795, 799, 895 P.2d 1 (1995). A case is moot when it involves only abstract propositions or questions, the substantial questions in the trial court no longer exist, or a court can no longer provide effective relief. *Spokane Research & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 99, 117 P.3d 1117 (2005); *State v. Slattum*, 173 Wn. App. 640, 647, 295 P.3d 788 (2013). We decline to remand for

12

correction of the first scrivener's error because the error is moot.

The second alleged error is the statement within section 2.2 Criminal History, which states "*DV: Domestic Violence was pled and proved." CP at 44. The State claims that the presence of the statement regarding domestic violence is boilerplate language. The State argues the judgment reflects no error because the trial court did not declare that any of Anders' convictions involved domestic violence. There was no checkmark by the entry. We agree with the State.

Dean Anders misunderstands the domestic violence designation. A review of the judgment and sentence reveals that boilerplate portions of the form provide simple abbreviations for common designations in different sections of the form. For example, in section 2.3 Sentencing Data the form lists (F), (D), (V), (RPh) (VH), (JP), (CSG), (AE), (ALF), and (P16). CP at 45. Each has a corresponding meaning so these abbreviations may be used in the sentencing data section. The statement regarding domestic violence is another recommended abbreviation tool for both sections 2.1 and 2.2. The judgment and sentence does not contain a "DV" notation in any of the criminal history boxes and thus it accurately indicates no DV present in Anders' criminal history.

## CONCLUSION

We affirm the judgment against and sentence of Dean Anders.

A majority of the panel has determined this opinion will not be printed in the

13

No. 32114-2-III
*State v. Anders*

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, A.C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Pennell, J.

14