IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76852-2 |
| Respondent, | ) ) ) | DIVISION ONE |
| v. | ) | UNPUBLISHED OPINION |
| JOSEPH ANTHONY DIGEROLAMO, a/k/a JOSEPH DI'GEROLAMO, | ) ) ) | |
| Appellant. | ) ) | FILED: October 8, 2018 |

CHUN, J. — A jury convicted Digerolamo of second degree rape after his deoxyribonucleic acid (DNA) matched the DNA collected from amylase found in the victim's rape kit. Digerolamo moved for post-conviction DNA testing to determine the type of amylase the rape kit detected. The trial court denied the motion, finding RCW 10.73.170 does not authorize amylase testing and Digerolamo did not meet the statute's substantive requirement. Digerolamo appeals the denial. Because Digerolamo does not meet RCW 10.73.170's procedural or substantive requirements, we affirm.

FACTS

S.B. spent a night at her aunt and Digerolamo's (her aunt's husband) home in 2009. S.B. drank alcohol to the point of intoxication that night but claimed Digerolamo did not drink any alcohol. Digerolamo states S.B. later threw up and the smell caused him to vomit as well. When S.B. went to bed, Digerolamo remained as the only male in the house. After S.B. fell asleep, she

awoke to the feeling of a man with his tongue in her vagina. S.B. tried to push the man off and then blacked out.

The next day the hospital performed a rape kit on S.B. The rape kit found amylase (a digestive enzyme found in saliva and other bodily fluids) on the perineal swab and on S.B.'s underwear. DNA testing determined the amylase came from Digerolamo. A jury convicted Digerolamo of second degree rape. This court affirmed the conviction on appeal.

In 2017, Digerolamo moved for post-conviction DNA testing under RCW 10.73.170(2)(iii).[1] Digerolamo specifically sought a test of his amylase found in the rape kit to determine if it came from his saliva or pancreas. Digerolamo asserted pancreatic amylase would support his innocence by proving the lab found his DNA in the rape kit because the victim sat on the toilet after Digerolamo vomited in it. The trial court denied the motion, finding the statute did

---

[1] The pertinent portion of RCW 10.73.170 provides:

(1) A person convicted of a felony in a Washington state court who currently is serving a term of imprisonment may submit to the court that entered the judgment of conviction a verified written motion requesting DNA testing, with a copy of the motion provided to the state office of public defense.

(2) The motion shall:
(a) State that:
(i) The court ruled that DNA testing did not meet acceptable scientific standards; or
(ii) DNA testing technology was not sufficiently developed to test the DNA evidence in the case; or
(iii) The DNA testing now requested would be significantly more accurate than prior DNA testing or would provide significant new information;
(b) Explain why DNA evidence is material to the identity of the perpetrator of, or accomplice to, the crime, or to sentence enhancement; and
(c) Comply with all other procedural requirements established by court rule.
(3) The court shall grant a motion requesting DNA testing under this section if such motion is in the form required by subsection (2) of this section, and the convicted person has shown the likelihood that the DNA evidence would demonstrate innocence on a more probable than not basis.
. . .
(5) DNA testing ordered under this section shall be performed by the Washington state patrol crime laboratory. Contact with victims shall be handled through victim/witness divisions.

not cover amylase testing and, even if it did, the testing would not meet the statute's substantive requirement. Digerolamo timely appeals.

ANALYSIS

Procedural Requirements of RCW 10.73.170

The State argues Digerolamo does not satisfy the procedural requirements because the statute's "DNA testing" language does not provide for amylase testing.[2] Digerolamo contends the State and trial court define DNA testing too narrowly, and amylase testing should be covered under the statute to meet the statutory goal to allow advances in technology to set innocent people free.[3] We agree with the State.

A.    Standard of Review

The meaning of a statute presents a question of law reviewed de novo. State v. Riofta, 166 Wn.2d 358, 365, 209 P.3d 467 (2009) (citing Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d. 4 (2002)).

B.    Analysis

To be granted post-conviction DNA testing, the requesting party must satisfy RCW 10.73.170's procedural and substantive requirements. Riofta, 166 Wn.2d at 364. Courts view the procedural requirements of the statute leniently. Riofta, 166 Wn.2d at 367.

---

[2] The State also claims Digerolamo did not meet the statute's procedural requirements because he did not demonstrate a crime laboratory can perform the testing he seeks. In support, the State cites RCW 10.73.170(5) ("DNA testing ordered under this section shall be performed by the Washington state patrol crime laboratory.") This section, however, does not mandate a petitioner demonstrate the Washington state patrol crime laboratory's ability to perform the requested testing to meet the procedural requirement.

In interpreting a statute, the court aims to carry out the legislature's intent and give effect to the plain meaning. Riofta, 166 Wn.2d at 365. If the statute does not define a term, courts determine the plain meaning by looking to dictionary definitions. State v. Braa, 2 Wn.App.2d 510, 518, 410 P.3d 1176 (2018) (citing Buchheit v. Geiger, 192. Wn. App. 691, 696, 368 P.3d 509 (2016)).

Courts find statutes ambiguous if they can be reasonably interpreted in more than one way. State v. Slattum, 173 Wn. App. 640, 649, 295 P.3d 788 (2013) (citation omitted). However, "[i]f a statute uses plain language and defines essential terms, the statute is unambiguous." State v. Gray, 151 Wn. App. 762, 768, 215 P.3d 961 (2009) (citation omitted). When a court determines a statute's meaning is plain on its face, it gives effect to the plain meaning. Slattum, 173 Wn. App. at 649.

Digerolamo asserts the term DNA testing should be interpreted broadly to include amylase testing. He contends this would meet the statutory goal of using technology to free innocent people. However, because the term DNA testing is unambiguous, this court declines to hold RCW 10.73.170 authorizes amylase testing.

RCW 10.73.170 is titled "DNA testing requests" and provides "[a] person convicted of a felony in a Washington state court who currently is serving a term of imprisonment may submit to the court that entered the judgment of conviction a verified written motion requesting DNA testing," but does not define DNA testing. RCW 1073.170(1). Because the statute does not define the term in

dispute, the court looks to dictionary definitions. Merriam-Webster's defines DNA test as a "test that examines DNA and that is used to identify someone or show that people are relatives." MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/DNA%20test [https://perma.cc/7PY4-YNJA]. Webster's Third New International Dictionary defines DNA as "any various nucleic acids that yield deoxyribose as one product of hydrolysis, are found in the cell nuclei and especially genes, and are associated with the transmission of genetic information." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 604 (2002). Similarly, Black's Law Dictionary defines DNA as "[d]eoxyribonucleic acid; the double-helix structure in cell nuclei that carries the genetic information of most living organisms." BLACK'S LAW DICTIONARY 584 (10th ed. 2014). As the definitions of DNA are uniform, the terms DNA and DNA testing are unambiguous because they cannot be reasonably interpreted in more than one way. Because the term DNA testing is unambiguous, this court must give effect to the term's plain meaning. The plain meaning of DNA testing is testing to identify the source of a DNA sample. Here, the amylase samples on the victim's perineal area and underwear have already undergone DNA testing and have identified Digerolamo as the source. The testing Digerolamo seeks would only determine whether the amylase came from Digerolamo's saliva or pancreas, as opposed to discovering the identity of the sample. As a result, this testing falls outside the scope of RCW 10.73.170 and

thus we affirm the trial court's denial of Digerolamo's motion for post-conviction DNA testing.

Substantive Requirement of RCW 10.73.170

The State claims, even if RCW 10.73.170 authorizes amylase testing, Digerolamo fails to meet the statute's substantive requirement. Digerolamo contends proof the amylase came from his pancreas demonstrates his innocence on a more probable than not basis. Again, we agree with the State.

A.    Standard of Review

Appellate courts review a trial court's application of a statutory standard for an abuse of discretion. Riofta, 166 Wn.2d at 370 (citing State v. Hardesty, 129 Wn.2d 303, 317, 915 P.2d 1080 (1996)). "A trial court abuses its discretion when an order is manifestly unreasonable or based on untenable grounds." State v. Thompson, 173 Wn.2d 865, 870, 271 P.3d 204 (2012) (citing State v. Rafay, 167 Wn.2d 644, 655, 222 P.3d 86 (2009)). A trial court bases its decision on untenable grounds "if it rests on facts unsupported in the record or was reached by applying the wrong legal standard." Thompson, 173 Wn.2d at 870 (internal quotations and citations omitted).

B.    Analysis

If a defendant meets RCW 10.73.170's procedural requirements, a trial court must grant the post-conviction DNA testing if he or she has also shown the "'likelihood that the DNA evidence would demonstrate innocence on a more probable than not basis.'" Riofta, 166 Wn.2d at 364 (citing RCW 10.73.170(3)).

6

A court must "grant a motion for postconviction testing when exculpatory results would, *in combination with the other evidence*, raise a reasonable probability the petitioner was not the perpetrator." Riofta, 166 Wn.2d at 367–68; see also State v. Crumpton, 181 Wn.2d 252, 262 332 P.3d 448 (2014) (stating "[the trial court] must focus on the likelihood that DNA evidence could demonstrate the individual's innocence in spite of the multitude of other evidence against them") (citation omitted). Our Supreme Court has noted DNA testing should be granted if a reported assault has only one perpetrator, because, even if other strong evidence exists, a DNA result that does not match the convicted person most likely demonstrates innocence. Crumpton, 181 Wn.2d at 260.

A trial court "presume[s] that the DNA evidence would be favorable" to the requesting party. Crumpton, 181 Wn.2d at 258. However, "neither our Supreme Court nor this court has held that a petitioner is entitled to additional inferences in his favor beyond the assumption of a favorable DNA test result." Braa, 2 Wn.App.2d at 521. As such, even with courts presuming favorable results, the "substantive standard is onerous" and those requesting post-conviction testing "face a heavy burden." Riofta, 166 Wn.2d at 367, 369–70 (citations omitted). The substantive standard is more stringent because defendants requesting post-conviction testing do "not come before the Court as one who is 'innocent,' but, on the contrary, as one who has been convicted by due process . . ." Herrera v. Collins, 506 U.S. 390, 399–400 (1993). Moreover, our courts want "to avoid

overburdening labs or wasting state resources without good reason." Crumpton, 181 Wn.2d at 261.

Digerolamo maintains he meets the substantive requirement's heavy burden. He asserts the pancreatic amylase would demonstrate a likelihood he is innocent of second degree rape because it would show the amylase samples from the victim's rape kit came from Digerolamo's wet vomit.

Proof the amylase came from Digerolamo's pancreas would benefit him because it would make his "vomit-transfer" theory more likely. However, other theories could also explain the presence of pancreatic amylase on the victim. As the State points out in its briefing, "even if Digerolamo had vomited on the night in question, both salivary and pancreatic amylase would likely be present in his mouth when he sexually assaulted the victim." Though the court presumes the testing will be favorable to Digerolamo in that it will be pancreatic amylase, he is not entitled to a further inference as to how the pancreatic amylase got onto the victim. See Braa, 2 Wn.App.2d at 521.

As such, the trial court properly exercised its discretion to find a favorable amylase test would not demonstrate Digerolamo's innocence on a more probable than not basis. Here, there was only one alleged perpetrator and the DNA evidence matched Digerolamo. While Digerolamo points out his DNA is the only forensic evidence linking him to the crime and the victim has limited memory of the night, it is not likely favorable test results would demonstrate his innocence in spite of the other evidence against him. In particular, the victim stated she was

8

sexually assaulted and the rape kit found Digerolamo's DNA on the victim and her underwear.

Affirmed.

_Chun, J._

WE CONCUR:

_Schindler, J._    _Appelwick, CJ_

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2018 OCT -8 AM 9:38