

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE MAY 0 7 2015
CHIEF JUSTICE

This opinion was filed for record
at 8:00 ʌm on May 7, 2015

for Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 90068-0 |
| Petitioner, | |
| v. | EN BANC |
| RYAN JAMES PEELER, | |
| Respondent. | Filed     MAY 0 7 2015 |

GORDON McCLOUD, J.—The intrastate detainers act (IDA), chapter 9.98 RCW, requires the State to bring a Washington State prisoner to trial for any untried charge within 120 days of the prisoner's request for a final disposition. RCW 9.98.010. Ryan Peeler was serving a prison sentence on a Snohomish County charge at the Washington Corrections Center (WCC) when he requested a final disposition of an untried charge in Skagit County. By the time that the Skagit County prosecutor received Peeler's final disposition request, however, the Department of Corrections (DOC) had transported him to the King County jail to await trial on unrelated

1

charges. Peeler was not returned to WCC until well after the Skagit County prosecutor received his request.

The State failed to bring Peeler to trial in Skagit County within 120 days of receiving his final disposition request. We affirm the Court of Appeals' decision that even though Peeler was physically located in King County when the State received his final disposition request, his request was valid and the State failed to meet the 120-day deadline to bring him to trial in Skagit County. We affirm.

## FACTS

The parties do not dispute the relevant procedural facts, which we summarize chronologically below:

| Jan. 28, 2011 | Skagit County charges Peeler by information with second degree assault. At the time, Peeler is in Snohomish County Jail on an unrelated charge. |
|---|---|
| Sept. 12, 2011 | Peeler is sentenced to a term of imprisonment on the Snohomish County charge. |
| Sept. 20, 2011 | Peeler commences his prison term at the WCC in Shelton. |
| Oct. 7, 2011 | While at the WCC, Peeler initiates his first request for speedy disposition of the untried Skagit County charge under chapter 9.98 RCW. |
| Oct. 18, 2011 | WCC transports Peeler to King County pursuant to a September 28, 2011 transport order. |

2

| Oct. 24, 2011 | A WCC official signs a certificate of inmate status attesting that Peeler is a prisoner at that institution. |
| --- | --- |
| Oct. 26, 2011 | The Skagit County prosecuting attorney and superior court receive Peeler's request and the certificate of inmate status. |
| Oct. 27, 2011 | The Skagit County Superior Court orders the DOC to transport Peeler to Skagit County Jail "as soon as possible." Between October 27, 2011, and November 17, 2011, DOC advises the Skagit County Prosecuting Attorney's Office by telephone that it cannot comply with the transport order because Peeler is in King County jail. |
| Dec. 23, 2011 | Peeler pleaded guilty and is sentenced to a term of imprisonment on the King County case. |
| Dec. 30, 2011 | Peeler is transported from King County jail back to the WCC. |
| Jan. 20, 2012 | Peeler initiates his second request for speedy disposition of the untried Skagit County charge. A WCC official signs a second certificate of inmate status. |
| Feb. 2, 2012 | The Skagit County Superior Court, issues a transport order for Peeler, and the deputy prosecuting attorney notes a hearing for February 16, 2012. |
| Feb. 14, 2012 | DOC transports Peeler to Skagit County Jail. |

3

| Feb. 16, 2012 | The Skagit County Superior Court arraigns Peeler on the second degree assault charge and sets the initial trial date for April 9, 2012. |
| --- | --- |
| Feb. 23, 2012 | The 120-day deadline based on Peeler's first request for speedy disposition expires. |
| Aug. 17, 2012 | Peeler moves to dismiss the Skagit County charge with prejudice for violation of the 120-day speedy disposition deadline under RCW 9.98.010(1). |
| Aug. 22, 2012 | The Skagit County Superior Court denies Peeler's motion. |
| Aug. 27, 2012 | Trial commences over 10 months after the prosecutor and court receive Peeler's first speedy disposition request. |

*See State v. Peeler*, noted at 179 Wn. App. 1038, 2014 WL 720879, at *1.

The Skagit County Superior Court denied Peeler's motion to dismiss, explaining, "For RCW 9.98.010 to apply[,] the person must be imprisoned and available for transport." Clerk's Papers (CP) at 86. That court correctly found that Peeler was physically located in King County, not WCC, when the Skagit County prosecutor received his first request for final disposition. The superior court therefore concluded that Peeler was not available for transport from WCC at that time, that that was the time period that counted for purposes of RCW 9.98.010, and, hence, that the 120-day time limit did not begin. CP at 85-86.

4

Peeler was then convicted by jury of second degree assault with a special verdict that the victim's injuries substantially exceeded the level of bodily harm necessary to constitute "substantial bodily harm." CP at 112. The superior court imposed an exceptional sentence of 100 months. CP at 272.

The Court of Appeals reversed. *Peeler*, 2014 WL 720879, at *1. It held that Peeler's first final disposition request effectively triggered the 120-day period on October 26, 2011, when the Skagit County prosecutor and superior court received it, and that the State did not timely bring him to trial. *Id.* at *5. The Court of Appeals remanded to the superior court with instructions to dismiss the Skagit County charge with prejudice. *Id.*

We granted the State's petition for review. *State v. Peeler*, 181 Wn.2d 1006, 332 P.3d 985 (2014).

## ANALYSIS

I.  Standard of Review

This case presents a question of statutory interpretation, which we review de novo. *Ass'n of Wash. Wine Spirits & Wine Distrib. v. Wash. State Liquor Control Bd.*, 182 Wn.2d 342, 350, 340 P.3d 849 (2015) (citing *State v. Veliz*, 176 Wn.2d 849, 853-54, 298 P.3d 75 (2013)). When interpreting a statute, our primary "'objective . . . is to ascertain and carry out the legislature's intent.'" *Ralph v. Dep't of Natural Res.*, 182 Wn.2d 242, 248, 343 P.3d 342 (2014) (quoting *Arborwood Idaho, LLC v.*

5

*City of Kennewick*, 151 Wn.2d 359, 367, 89 P.3d 217 (2004)). We determine legislative intent from the statute's plain language, "considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole." *Ass'n of Wash. Spirits*, 182 Wn.2d at 350 (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)).

II.    The Intrastate Detainers Act, Chapter 9.98 RCW, Gives Prisoners the Right To Request a Trial on Untried Charges within 120 Days

The State argues that Peeler's initial request for final disposition of the untried Skagit County charge did not meet the IDA's requirements. The State concludes that because Peeler's request was invalid, the 120-day time limit did not apply and Peeler's trial was timely. Suppl. Br. of Pet'r at 1, 8-10, 12. The Court of Appeals, on the other hand, held that Peeler's request was valid and that the State failed to bring him to trial within 120 days of receiving his valid request, warranting dismissal of the Skagit County charge with prejudice. *Peeler*, 2014 WL 720879, at *5.

The IDA gives Washington State prisoners the right to request a trial on untried charges within 120 days of the request. *State v. Morris*, 126 Wn.2d 306, 310, 892 P.2d 734 (1995); RCW 9.98.010(1).

The procedures for making that final disposition request, honoring that request, and remedying a violation of the right to have such a request honored are provided by statute. RCW 9.98.010 states,

> (1) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of this state, and whenever during the continuance of the term of imprisonment there is pending in this state any untried indictment, information, or complaint against the prisoner, he or she shall be brought to trial within one hundred twenty days after he or she shall have caused to be delivered to the prosecuting attorney and the superior court of the county in which the indictment, information, or complaint is pending written notice of the place of his or her imprisonment and his or her request for a final disposition to be made of the indictment, information, or complaint: PROVIDED, That for good cause shown in open court, the prisoner or his or her counsel shall have the right to be present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the superintendent having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the indeterminate sentence review board relating to the prisoner.
>
> (2) The written notice and request for final disposition referred to in subsection (1) of this section shall be given or sent by the prisoner to the superintendent having custody of him or her, who shall promptly forward it together with the certificate to the appropriate prosecuting attorney and superior court by certified mail, return receipt requested.

This statute provides a two-stage process: First, a prisoner makes a request for a speedy and final disposition of untried charges, which "'shall be given or sent by the prisoner to the superintendent having custody of him'." *Morris*, 126 Wn.2d at

7

310 (quoting RCW 9.98.010(2)). Second, the superintendent who has custody of the prisoner forwards both this request and a certificate containing particular details to the appropriate prosecuting attorney and superior court. *Id.* (citing RCW 9.98.010(2)).

This statute also provides a strict time limit and remedy. It specifies that the prosecutor's and the superior court's actual receipt of the request triggers the 120-day time limit. *Id.* at 313 (citing RCW 9.98.010(1)-(2)). The statutory remedy is clear and harsh: if the State fails to bring the prisoner to trial within 120 days of the prosecutor's and the superior court's receipt of the final disposition request, "no court of this state shall any longer have jurisdiction thereof, nor shall the untried indictment, information or complaint be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."[1] RCW 9.98.020.

Thus, as this court has recognized—and as the Court of Appeals in this case held—the prosecutor has the responsibility to ensure that defendants are timely brought to trial. *Morris*, 126 Wn.2d at 314.

---

[1] The harshness of the remedy of dismissal with prejudice demonstrates the high value that the legislature placed on encouraging the expeditious and orderly disposition of charges and determination of the proper status of any and all detainers based on untried charges. *See State v. Morris*, 74 Wn. App. 293, 297, 873 P.2d 561 (1994), *aff'd on other grounds*, 126 Wn.2d 306 (discussing IDA's purpose); *State v. Flinn*, 154 Wn.2d 193, 199 n.1, 110 P.3d 748 (2005) (noting the "harsh remedy of dismissal with prejudice" for failure to comply with time for trial rules).

III.   Peeler Satisfied the Requirements Described in the IDA's Plain Language

In this case, Peeler's first final disposition request met all of the statutory requirements. The first step that the prisoner must take to request final disposition, according to the statute, is to submit a notice and request for final disposition to the superintendent having custody of him. *Id.* at 310 (citing RCW 9.98.010(2)). Peeler completed that step for requesting final disposition of the Skagit County assault charge when, while imprisoned at WCC on a Snohomish County charge, he completed a "Notice of Place of Imprisonment and Request for Final Disposition of Untried Indictment, Information or Complaint (RCW 9.98.010)" and submitted it to the WCC superintendent, who had custody of him. CP at 18, 84. Peeler's request also met the requirements for the second step of the process for requesting final disposition of the Skagit County charge. That second step required the superintendent having custody of Peeler to forward Peeler's final disposition request together with a certificate containing various details to the appropriate prosecuting attorney and superior court. *Morris*, 126 Wn.2d at 310 (citing RCW 9.98.010(2)). On October 24, 2011, WCC completed the certificate of inmate status, which correctly stated Peeler's term of commitment for his sentence on the Snohomish County charge; time already served and time remaining to be served on the sentence; amount of good time earned; date of parole eligibility; and any relevant decisions of

the indeterminate sentence review board. CP at 19; RCW 9.98.010(1). WCC then sent the request and the certificate to the Skagit County prosecutor and superior court. *Morris*, 126 Wn.2d at 310 (citing RCW 9.98.010(2)). The prosecutor and the superior court received them on October 26, 2011, which commenced the 120-day time limit. *Id.* at 313; CP at 85, 283-84. The statute contains no additional steps or requirements for completing a valid final disposition request. The State failed to bring Peeler to trial by February 23, 2012, when the 120-day time limit expired.

Accordingly, in October 2011, Peeler made a valid disposition request of the Skagit County charge while serving his sentence on the Snohomish County charge. The State failed to honor this request when it did not timely bring him to trial. The appropriate remedy for the State's failure to meet its statutory obligation was to dismiss the Skagit County charge with prejudice. RCW 9.98.020.

IV.    RCW 9.98.010 Imposes No Physical Location Requirement

Although Peeler complied with all of the enumerated procedural requirements for a valid disposition request, the State and the dissent seek to insert an additional requirement into RCW 9.98.010 based on the prisoner's physical location. We decline to write this additional requirement into the statute.

A. Notice of The Place of Imprisonment

The State acknowledges that Peeler was physically located at WCC when he submitted his notice of his place of imprisonment. Suppl. Br. of Pet'r at 8. But the

State claims that Peeler's final disposition request became complete only when WCC completed the certificate of inmate status, which occurred while he was in King County. *Id.* at 9. Thus, the State asserts, "Peeler was no longer in the location where he provided the 'written notice of the place of his or her imprisonment,'" and that "Peeler was no longer available to have a proper request from 'the superintendent having custody of him or her' since he was no longer in that prison."[2] *Id.*

The State cites the statutory language "written notice of the place of his or her imprisonment" to support its reading of RCW 9.98.010. But contrary to the State's assertions, RCW 9.98.010 does not require that a prisoner be physically present in

---

[2] We deny Peeler's motion to strike the brief of Amicus Curiae Washington Association of Prosecuting Attorneys (WAPA) citing cases outside of Washington to argue that we should toll the 120-day time limit during any time that a defendant is "unable to stand trial" due to proceedings in another jurisdiction. Br. of Amicus Curiae Wash. Ass'n of Prosecuting Attorneys at 7-11. We note that the Court of Appeals dismissed a similar argument that the State raised following oral argument in that court. *Peeler*, 2014 WL 720879, at *4 n.4. We also deny Peeler's motion to supplement the record in response to this amicus brief. Peeler seeks to admit documents that he claims establish procedural facts related to the amicus WAPA's tolling argument. Resp't Motion to Strike New Arguments Raised in Amicus Brief Filed by WAPA or Permit Supplementation of the Record at 4-7. Peeler fails to meet the requirements of RAP 9.11 to permit supplementation of the record. Procedural facts relating to Peeler's transport to and from King County are already available in the record. CP at 39-42, 84 (Peeler's transport order in King County entered September 28, 2011); CP at 36, 44, 82 (Peeler transported from WCC to King County on October 18, 2011); CP at 48-51, 85 (Peeler's resolution of King County cases by plea to a term of imprisonment).

11

the prison where he is serving a term of imprisonment at the time that the *superintendent submits* the request and the prosecutor and superior court receive it. Rather, the statute requires a prisoner to "give[] or sen[d]" a notice and request "*to the superintendent having custody of him*." RCW 9.98.010(2) (emphasis added). This is obviously a reference to who has "custody" of the prisoner when the prisoner "gives or sends" his request "to" that superintendent. On October 7, 2011, Peeler fulfilled this requirement by providing a disposition request that stated accurately, "I am a prisoner confined at the Washington Corrections Center." CP at 18. He then forwarded this request to WCC, which had custody of him at that time. CP at 84. Peeler complied with all of the IDA's requirements described in its plain, unambiguous language. We decline to insert additional language or requirements in an unambiguous statute when the legislature chose not to do so.[3] *State v. Delgado*, 148 Wn.2d 723, 727, 63 P.3d 792 (2003).[4]

---

[3] The dissent also argues that the statute's purpose is "to facilitate transportation and the processing of the prisoner's case within the 120 day period" and then concludes that "[f]or the statute to serve its purpose, the prosecutor must have correct notice of the location of the prisoner when the request is received." Dissent at 8. This is an attempt to insert a physical location requirement into the statute, despite the fact that the legislature did not do so.

[4] Note that this case does not present the question of whether a prisoner who had already been transported to a county jail, and who "gives" or "sends" his request from there, fulfills the statute's requirements. Peeler was at WCC when he submitted his request.

12

The State's reading of the statute also contradicts the legislature's intent that the act apply "whenever" a person has entered upon a term of imprisonment and "whenever during the continuance of the term of imprisonment" the prisoner faces pending untried charges. RCW 9.98.010(1); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2602 (2002) ("whenever" means "at any or all times : in any or every instance . . . at whatever time : no matter when"). The State's interpretation would defeat the statute's purpose because inmates have no control over the facility in which they serve their sentences and can be moved without advance notice. *See State v. Silva*, 106 Wn. App. 586, 592, 24 P.3d 477 (2001) (court must avoid "strained or absurd results" that defeat the purpose of a statute). Because no court suspended or vacated Peeler's prison sentence on the Snohomish County charge, he was still a prisoner continuing his term of imprisonment while he was temporarily in King County. *See* RCW 72.68.010 (permitting prisoner's "transfer to another institution"); *State v. Bishop*, 134 Wn. App. 133, 139, 139 P.3d 363 (2006) (defendant's time spent awaiting resentencing after removal from a drug rehabilitation program did not remove her from her original sentence; defendant remained under her term of imprisonment when she requested disposition of Washington charges under the Interstate Agreement on Detainers, chapter 9.100 RCW). The State could have

13

sought a continuance within the 120-day period under RCW 9.98.010(1) to enable the superior court to retain jurisdiction over Peeler's assault case, but it did not do so.[5]

Again, the IDA's plain language[6] requires only that the prisoner accurately indicate the location from which the prisoner makes the request at the time that he or she submits it; the IDA does not require a prisoner to be physically present at the same site from which the prisoner makes the request at any other time. RCW 9.98.010(1). The State seeks to distinguish between the prisoner's physical location on the date that the prisoner submits a request for final disposition and the date that this request is completed or received. But the statute's plain language creates no

---

[5] The dissent expresses concern that the defendant might be unavailable to appear at a continuance hearing if he is not available to be transported for trial. Dissent at 11. While this is a valid concern, we are in no position to override the legislature's determination that the opportunity for a court to grant "any necessary or reasonable continuances" provides an appropriate means of avoiding the harsh remedy of dismissing the charges. RCW 9.98.010(1).

[6] [*W*]*henever* during the continuance of the term of imprisonment there is pending in this state any untried indictment, information, or complaint against the prisoner, he or she shall be brought to trial within one hundred twenty days after he or she shall have caused to be delivered to the prosecuting attorney and the superior court of the county in which the indictment, information, or complaint is pending *written notice of the place of his or her imprisonment* and his or her request for a final disposition to be made of the indictment, information, or complaint.

*Id.* (emphasis added).

14

such distinction. As stated above, we will not insert language into an unambiguous statute that the legislature chose not to include. *Delgado*, 148 Wn.2d at 727.

Superintendent Having Custody

Building on its attempt to insert a continuing physical location requirement into the IDA, the State claims that Peeler's request was inaccurate and therefore invalid because, when the State received it, Peeler "was no longer in the custody of the Superintendent of [DOC] but in pretrial custody of another county." Suppl. Br. of Pet'r at 9-10 (boldface omitted). Specifically, the State argues that because Peeler was in King County when the State received his demand, WCC lacked custody of him and the request failed to identify his location accurately, and therefore his request was invalid. *Id.* The State further argues that Peeler's request failed to comply with RCW 9.98.010(2), claiming that WCC "could not have properly issued Peeler's Certificate of Inmate Status on October 24, 2011, because Peeler was no longer in [WCC] but was in King County." *Id.* at 12.

The State relies on the statutory language requiring the prisoner to submit written notice of the place of imprisonment "to the superintendent having custody of the prisoner," RCW 9.98.010(1), and also the statute's requirement "written notice and request for final disposition referred to in subsection (1) of this section shall be given or sent by the prisoner to the superintendent having custody of him," RCW 9.98.010(2), to support its argument that Peeler's temporary absence from

15

WCC interrupted the term of imprisonment and WCC's custody over Peeler under the IDA. This interpretation depends on the notion that we should construe "custody" in the IDA strictly to mean "physical custody." But "custody" generally means "care and control," not necessarily physical location. BLACK'S LAW DICTIONARY 467 (10th ed. 2014). DOC certainly thought that it still had "custody" over Peeler when he was serving his sentence but transferred out to King County. DOC records tracked Peeler's "external movement" to King County, noting that he was "Out To Court" while he was serving his sentence on the Snohomish County charge. CP at 36. Although movements documented in DOC records include "Custody Change," these records indicate no custody changes when Peeler was "Out To Court" in King County. *Id.* These notations are consistent with the fact that "the state political system . . . remains in legal custody of the prisoner" even after transfer to an out of state institution.[7] *In re Pers. Restraint of Young*, 95 Wn.2d 216, 234, 622 P.2d 373 (1980) (Utter, C.J., concurring). If DOC retains custody of a prisoner even after the prisoner's transfer *out of state*, then we can infer that DOC maintains legal custody of the prisoner after transfer to an in-state institution. *See also Jones*

---

[7] The dissent concedes this point. It acknowledges that "while in King County, Peeler remained in the formal custody of DOC because he continued to serve a term of imprisonment for his Snohomish County conviction." Dissent at 9. Its conclusion that "custody" means something different in the statute at issue ignores the legislature's chosen language.

*v. Cunningham*, 371 U.S. 236, 241, 83 S. Ct. 373, 9 L. Ed. 2d 285 (1963) (state prisoner on parole remains in "custody" for purposes of federal habeas corpus 28 U.S.C. § 2241 "in custody" prerequisite); *Maleng v. Cook*, 490 U.S. 488, 491-93, 109 S. Ct. 1923, 104 L. Ed. 2d 540 (1989) ("in custody" prerequisite to filing federal habeas corpus petition does not require physical confinement; prisoner is "in custody" of state even though serving time in different institution on prior or subsequent sentence). Thus, the WCC superintendent retained "custody" over Peeler even while he was "out to court" in King County and not physically located in WCC.

The State failed to bring Peeler to trial within 120 days of receiving his valid disposition request.[8] Because the Skagit County Superior Court granted no

---

[8] The only case law that the State cites to support its contentions is not persuasive. The State cites *State v. Slattum*, 173 Wn. App. 640, 655, 295 P.3d 788 (2013), noting that the case "evaluated the phrase 'term of imprisonment' under RCW 10.73.170 and compared it to that phrase in . . . RCW 9.98.010(1)," and explained that this language meant "'confinement in a particular location.'" Supp. Br. of Pet'r at 7-8 (quoting *Slattum*, 173 Wn. App. at 655). But the "particular location" identified in the statute as the Court of Appeals noted in *Slattum*, is "a penal or correctional institution of this state." *Slattum*, 173 Wn. App. at 655 (emphasis omitted); RCW 9.98.010(1). Here, Peeler was serving a term of imprisonment at the WCC, a state correctional facility, when he initiated his final disposition request.

The State also cites *State v. Rising*, 15 Wn. App. 693, 695, 552 P.2d 1056 (1976), *State v. Rolax*, 7 Wn. App. 937, 940, 503 P.2d 1093 (1972), and *State v. Johnson*, 79 Wn.2d 173, 176, 483 P.2d 1261 (1971), for the proposition, "'A defendant's formal request is a prerequisite to the commencement of the running of

17

continuances, the mandatory language in RCW 9.98.020 commanded that the court "shall" dismiss the Skagit County charge with prejudice.[9]

We recognize that ruling in Peeler's favor might raise practical concerns about prisoners facing charges in multiple counties having charges dismissed because the State is unable to timely transport the prisoner among the various counties. Supp. Br. of Pet'r at 12-15. Indeed, when a prisoner faces trials in multiple counties, nothing in the IDA prevents the prisoner from requesting multiple final dispositions simultaneously, arguably requiring the State to transport the prisoner among counties within a short period of time for trial or for a continuance hearing. RCW 9.98.010(1). The State is therefore correct that this is inconvenient and expensive. But "we do not rewrite [the law] to insert our own policy judgments." *In re Custody of B.M.H.*, 179 Wn.2d 224, 266-67, 315 P.3d 470 (2013) (Wiggins, J., dissenting in

---

the 120-day time period.'" Suppl. Br. of Pet'r at 8. And the State cites *State v. Young*, 16 Wn. App. 838, 840, 561 P.2d 204 (1977) for the notion, "Compliance with the requirements of RCW 9.98.010 is required in order to claim the benefit of the 120-day time period resulting in dismissal under RCW 9.98.020." *Id.* These propositions are certainly correct. Indeed, as we discussed, because Peeler's formal request for final disposition in October 2011 complied with the IDA, the prosecutor's receipt of this request commenced the 120-day time period. Thus, Peeler can claim the benefit of the 120-day time period for dismissal of the Skagit County charge.

[9] *See Erection Co. v. Dep't of Labor & Indus.*, 121 Wn.2d 513, 518, 852 P.2d 288 (1993) ("It is well settled that the word 'shall' in a statute is presumptively imperative and operates to create a duty." (collecting cases)).

18

part) (citing *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 109, 285 P.3d 34 (2012); *Sedlacek v. Hillis*, 145 Wn.2d 379, 390, 36 P.3d 1014 (2001)). The State's argument about balancing of convenience and economy with timely and orderly disposition of charges is best directed to the legislature.[10]

## CONCLUSION

The State failed to bring Peeler to trial on the Skagit County charge within 120 days of receiving his final disposition request that satisfied the requirements of RCW 9.98.010. We affirm the Court of Appeals' decision reversing Peeler's conviction and judgment and remanding to the Skagit County Superior Court to dismiss with prejudice.

---

[10] While we agree with the dissent that these practical and policy concerns are important, dissent at 12, we disagree that these concerns can override the plain, unambiguous statutory language.

WE CONCUR:

No. 90068-0

FAIRHURST, J. (dissenting)—I dissent because the State did not violate the intrastate detainers act (IDA), chapter 9.98 RCW. Ryan James Peeler's first request for final disposition did not comply with the IDA and, therefore, did not trigger the 120 day period. Peeler's second request for final disposition was sufficient to start the 120 day period under the IDA, and a trial was timely set. To reach its holding, the majority misinterprets the requirements of the IDA.

This case involves Peeler's requests for final disposition of an untried information under the IDA. The IDA provides that an incarcerated defendant may request a trial on any untried charges. RCW 9.98.010(1). Once the request is received by the prosecuting attorney, a trial must be set within 120 days. If a trial is not set within 120 days from the receipt of the request, the untried charges must be dismissed with prejudice. RCW 9.98.020. The issue in this case is whether Peeler's first request for final disposition was sufficient to trigger the 120 day period.

The Court of Appeals found that the 120 day period under the IDA began when Peeler's first request for a speedy disposition was received by the Skagit County prosecuting attorney on October 26, 2011 and the period expired on February 23, 2012. *State v. Peeler*, noted at 179 Wn. App. 1038, 2014 WL 720879, at *1. Since Peeler's trial was not set until April 9, 2012, the Court of Appeals remanded the case to dismiss the Skagit County charge with prejudice. 2014 WL 720879, at *5.

The majority affirms the Court of Appeals and holds that the State violated the IDA by not bringing Peeler to trial within 120 days of receiving his request. I dissent and would reverse the Court of Appeals and remand the case to address Peeler's unresolved claims.[1]

## A.    Standard of review

We review statutory interpretation de novo. *State v. Gray*, 174 Wn.2d 920, 926, 280 P.3d 1110 (2012). The objective in interpreting a statute is to ascertain and carry out the legislature's intent. *Id.* The process of statutory interpretation begins

---

[1] Peeler's brief to the Court of Appeals asserted that the trial court violated Peeler's rights to due process of law by not providing the jury with an instruction on the inferior degree offense of fourth degree assault in a prosecution for second degree assault. Appellant's Opening Br. at 2. In addition, Peeler argued that the aggravating factor in RCW 9.94A.535(2)(y) is unduly vague and violates the Sixth and Fourteenth Amendments to the United States Constitution as well as RCW 9.94A.530(3). *Id.* Because the Court of Appeals reversed Peeler's conviction, it did not address these contentions. *Peeler*, 2014 WL 720879, at *5.

2

with the statute's plain meaning. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d

516, 526, 243 P.3d 1283 (2010). If a statute's meaning is plain on its face, we give

effect to that plain meaning. *Gray*, 174 Wn.2d at 927. The court cannot add words

or clauses to unambiguous statutes. *State v. Delgado*, 148 Wn.2d 723, 727, 63 P.3d

792 (2003). "A statute is ambiguous when it is 'susceptible to two or more

reasonable interpretations,' but 'a statute is not ambiguous merely because different

interpretations are conceivable.'" *Gray*, 174 Wn.2d at 927 (internal quotation marks

omitted) (quoting *Estate of Haselwood v. Bremerton Ice Arena, Inc.*, 166 Wn.2d

489, 498, 210 P.3d 308 (2009)).

B.      The State did not violate the IDA

The IDA gives incarcerated defendants within Washington State the right to

request trial on any untried charge. *State v. Morris*, 126 Wn.2d 306, 310, 892 P.2d

734 (1995). A trial must be set for the charge within 120 days after the prosecuting

attorney receives a valid, written request. *Id.* at 314.

The IDA provides:

> (1) Whenever a person has entered upon a term of imprisonment in a
> penal or correctional institution of this state, and whenever during the
> continuance of the term of imprisonment there is pending in this state
> any untried indictment, information, or complaint against the prisoner,
> he or she shall be brought to trial within one hundred twenty days after
> he or she shall have caused to be delivered to the prosecuting attorney
> and the superior court of the county in which the indictment,
> information, or complaint is pending written notice of the place of his

or her imprisonment and his or her request for a final disposition to be made of the indictment, information or complaint: PROVIDED, That for good cause shown in open court, the prisoner or his or her counsel shall have the right to be present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the superintendent having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the indeterminate sentence review board relating to the prisoner.

(2) The written notice and request for final disposition referred to in subsection (1) of this section shall be given or sent by the prisoner to the superintendent having custody of him or her, who shall promptly forward it together with the certificate to the appropriate prosecuting attorney and superior court by certified mail, return receipt requested.

(3) The superintendent having custody of the prisoner shall promptly inform him or her in writing of the source and contents of any untried indictment, information, or complaint against him or her concerning which the superintendent has knowledge and of his or her right to make a request for final disposition thereof.

(4) Escape from custody by the prisoner subsequent to his or her execution of the request for final disposition referred to in subsection (1) of this section shall void the request.

RCW 9.98.010.[2]

The IDA sets up a two-stage process for a prisoner to seek final disposition of an untried charge. *Morris*, 126 Wn.2d at 310. First, the prisoner makes the request for a final disposition of the untried charges. *Id.* This request is given or sent by the

---

[2]The current version of RCW 9.98.010 is quoted above, and the current version of chapter 9.98 RCW will be cited throughout this memorandum. The statute was changed in 2011 to make it gender neutral. *See* LAWS OF 2011, ch. 336, § 345.

prisoner to the superintendent having custody of him. *Id.* Second, the superintendent having custody of the prisoner forwards the request with a certificate stating the term of confinement and other details appropriate for the prosecuting attorney and superior court. *Id.*; RCW 9.98.010(1). As provided in the statute, the 120 day period begins only when the prisoner "shall have caused to be delivered to the prosecuting attorney and the superior court . . . written notice of the place of his or her imprisonment and his or her request for a final disposition." RCW 9.98.010(1); *see also Morris*, 126 Wn.2d at 314. Once the appropriate prosecuting attorney receives a valid request, the IDA requires the prosecuting attorney to bring the defendant to trial within 120 days. *Morris*, 126 Wn.2d at 314.

The Court of Appeals held that Peeler's first request was effective when received by the prosecuting attorney because Peeler continued to serve a term of imprisonment while in the King County jail. *Peeler*, 2014 WL 720879, at \*4-5. According to the Court of Appeals, Peeler's subsequent change of location did not void or nullify his first request. *Id.* at \*5. While the Court of Appeals was correct in finding that Peeler was serving a term of imprisonment,[3] it erred in assessing the validity of Peeler's request for final disposition.

---

[3]To interpret the IDA, courts have looked to the intent and language of the interstate agreement on detainers (Interstate Agreement), chapter 9.100 RCW. *See Morris*, 126 Wn.2d at 310. The Interstate Agreement is an interstate compact with parallel language and intent to the IDA. *Id.* The Interstate Agreement applies to prisoners who have "entered upon a term of

The majority holds that Peeler's first request complied with the IDA because Peeler made a request for final disposition while imprisoned and the superintendent having custody of Peeler at the time he made the request forwarded the request along with the necessary certificate to the prosecuting attorney and superior court. Majority at 9. The prosecuting attorney has the responsibility to bring the prisoner to trial within 120 days and as the majority notes, failure to do so results in a harsh penalty. *Id.* at 8. However, the majority fails to acknowledge that a prisoner must also strictly comply with the statute to trigger the 120 day period. *State v. Young*, 16 Wn. App. 838, 840, 561 P.2d 204 (1977) (noting that the statute requires a defendant to make a formal, written request for disposition as a prerequisite to triggering the 120 day period); *In re Pers. Restraint of Myers*, 20 Wn. App. 200, 205, 579 P.2d 1006 (1978) ("[O]nly those individuals who have complied with the statute and have submitted a

---

imprisonment in a penal or correctional institution" or who during the continuance of a term of imprisonment have untried charges lodged against them by other states or the federal government. RCW 9.100.010 art. III. When interpreting the Interstate Agreement courts have found that the phrase "term of imprisonment" requires that a prisoner is confined in some manner and continues to serve a prison sentence. *See United States v. Dobson*, 585 F.2d 55, 58-59 (3rd Cir. 1978) ("that definable period of time during which a prisoner must be confined in order to complete or satisfy the prison term or sentence which has been ordered" (emphasis omitted)). Peeler was confined in the King County jail and continued to serve his prison sentence for the Snohomish County conviction. A prisoner's temporary absence from a state prison does not interrupt a term of imprisonment. *See State v. Bishop*, 134 Wn. App. 133, 139, 139 P.3d 363 (2006) (finding that under the Interstate Agreement a prisoner was serving a term of imprisonment while in a drug rehabilitation program and during resentencing after her removal from the drug program because she was never released from her original sentence).

6

written request for disposition of the pending action may claim the benefit of the 120-day time period.").

1. Peeler's first request for final disposition of the Skagit County charge was ineffective when received by the prosecuting attorney

An effective request for final disposition under the IDA is actually a package that includes three parts: (1) the prisoner's "request for a final disposition," (2) the prisoner's "written notice of the place of his or her imprisonment," and (3) "a certificate of the superintendent having custody of the prisoner" stating the details of the prisoner's incarceration. RCW 9.98.010(1). Peeler's case turns on whether his first request met all three requirements to trigger the 120 day period. *See Young*, 16 Wn. App. at 840 (requirements of RCW 9.98.010 must be met in order to commence the running of that statute's 120 day period). Peeler's request was inadequate as to requirements (2) and (3).

a) Peeler's request did not list his correct place of imprisonment

The 120 day period begins when the prosecuting attorney receives the request. *Morris*, 126 Wn.2d at 314. Although Peeler's request was accurate when he wrote it on October 7, 2011, when the prosecuting attorney received the request on October 26, 2011, Peeler's place of imprisonment was the King County jail. According to the majority, the IDA does not require that a prisoner be physically present in the prison that he or she lists on the request at the time that the superintendent submits

7

the request and the prosecuting attorney receives it because there is no explicit physical location requirement in the IDA. Majority at 10. The majority finds that the plain language of the statute requires that the prisoner list only the correct location from which he or she made the request. *Id.* at 14.

However, the purpose of requiring the prisoner to provide notice of his or her place of imprisonment, although not explicitly stated in the IDA, is to facilitate transportation and the processing of the prisoner's case within the 120 day period. *See Morris*, 126 Wn.2d at 307 (purpose of the statute is to enable prisoners to have pending matters addressed within 120 days). For the statute to serve its purpose, the prosecuting attorney must have correct notice of the location of the prisoner when the request is received. Otherwise, as happened in this case, the prosecuting attorney cannot execute a transport order to where the prisoner says he is located. Peeler's request failed to inform the prosecuting attorney of his correct location and thus was not sufficient to trigger the 120 day period under RCW 9.98.010(1).

> b) The certificate that accompanied the request was not issued by the superintendent having custody of Peeler

The word "custody" is not defined in the IDA. When a phrase is not given a specific statutory definition, the words in the statute are given their common law or ordinary meaning. *AllianceOne Receivables Mgmt., Inc. v. Lewis*, 180 Wn.2d 389, 395, 325 P.3d 904 (2014). The word "custody" is defined as "[t]he care and control

of a thing or person for inspection, preservation, or security." BLACK'S LAW DICTIONARY 467 (10th ed. 2014). As used in the IDA, the plain meaning of the term "custody" refers to the facility that actually has care and control of the prisoner. Here, when Peeler was at the King County jail for pretrial matters, he was under the immediate control of King County. Because King County had custody of Peeler on October 18, 2011, a Department of Corrections (DOC) superintendent at the Washington Corrections Center (WCC) in Shelton could not accurately issue a certificate of inmate status on October 24, 2011. The superintendent at WCC did not then have "custody." RCW 9.98.010(1) ("certificate of the superintendent having custody of the prisoner"), (2) ("superintendent having custody of him or her"), (3) ("superintendent having custody of the prisoner").

Peeler and the majority are correct that while in King County, Peeler remained in the formal custody of DOC because he continued to serve a term of imprisonment for his Snohomish County conviction. *State v. Swenson*, 150 Wn.2d 181, 192, 75 P.3d 513 (2003) (noting that once a defendant is charged and sentenced he or she is in the formal custody of DOC even if transported to a different county); *State v. Smeltzer*, 86 Wn. App. 818, 821, 939 P.2d 1235 (1997) ("[A]fter sentencing, all felons are under the jurisdiction of the state's penal system, which includes even the county jails."). However, the word "custody" as used in the IDA must reference

9

something more specific than the formal custody of DOC. Every prisoner that can make a request under the IDA is in the formal custody of DOC because he or she is serving a term of imprisonment. To enable the prosecuting attorney to bring the prisoner to trial within 120 days, the superintendent that actually has custody of the prisoner must certify the request. Here, that would be the superintendent or other official with that capacity at the King County jail.

2.      The majority's holding frustrates the purpose of the IDA

The majority's interpretation of the IDA will allow prisoners with multiple charges in different counties to take advantage of the IDA to get untried charges against them dismissed with prejudice. Once transported out of a DOC correctional facility and to a county jail, a prisoner is unavailable for transportation to another county jail to attend a continuance hearing or trial on other charges. *See Swenson*, 150 Wn.2d at 190 (affirming the trial court's finding that once the prisoner was transported to King County he could not be transported to Jefferson County before returning to the correctional facility and DOC custody); *see also City of Seattle v. Guay*, 150 Wn.2d 288, 298, 76 P.3d 231 (2003) (noting that while a prosecuting attorney can issue a transport order, there is no mechanism to compel another jurisdiction or court to obey that order). Therefore, to transport a prisoner to attend trial or a continuance hearing, the prosecuting attorney must wait for the prisoner to

be returned to a DOC correctional facility, which could occur beyond the 120 day time limit despite the prosecuting attorney's efforts. *Swenson*, 150 Wn.2d at 192.

The Court of Appeals faulted the prosecuting attorney for inaction. *Peeler*, 2014 WL 720879, at *5. However, the prosecuting attorney issued a formal transport order the day after receiving Peeler's request. It was Peeler's inaccurate request that thwarted the process, not the prosecuting attorney's inaction or imprudence. The Court of Appeals also faulted the prosecuting attorney for not seeking a continuance. The IDA provides that "for good cause shown in open court, the prisoner or his or her counsel shall have the right to be present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." RCW 9.98.010(1). However, if the prisoner cannot be transported for trial, it is unlikely that he or she also can be transported to attend a continuance hearing. Therefore, seeking a continuance does not resolve the issue here, as the Court of Appeals suggested.

Moreover, the majority's interpretation contravenes the intent of the legislature to create a system that results in the timely and orderly disposition of charges. As the majority acknowledges, under its interpretation a prisoner could make multiple final disposition requests simultaneously, resulting in prosecuting attorneys submitting conflicting transport orders and the dismissal of untried charges due simply to logistics and not the carelessness of a prosecuting attorney. Majority

11

at 18. The majority dismisses the practical implications of its holding by stating that these issues should be addressed to the legislature. However, the plain language of the IDA does not dictate this result; rather these practical problems arise from the majority's interpretation of the IDA.

Requiring that a final disposition request provide accurate notice of the prisoner's place of imprisonment when received by the prosecuting attorney and be accompanied by a certificate from the superintendent with actual custody of the prisoner comports with the purpose of the IDA and resolves the practical issues with the majority's interpretation. Because Peeler's first request for final disposition of the Skagit County charge was not accurate when received, I would hold that the request was not effective to commence the 120 day period under the IDA.

C.    Peeler's second request for final disposition of the Skagit County charge was effective

Peeler's second request for final disposition of the Skagit County charge made on January 20, 2012, was effective. Peeler made a request for final disposition of the Skagit County charge and provided written notice of his place of imprisonment. DOC issued a certificate of offender status on January 25, 2012. Peeler remained at WCC until he was transported to Skagit County Superior Court on February 2, 2012 pursuant to a transport order by the Skagit County prosecuting attorney. A trial date

12

was set for April 9, 2012, within the 120 day period based on Peeler's second request.

## CONCLUSION

Peeler's first request for final disposition of the Skagit County charge was not effective when received by the prosecuting attorney. The IDA requires that a prisoner initiate the process by providing written notice of his place of imprisonment to the superintendent, and that notice, as well as a certificate from the superintendent having custody of him or her, be forwarded to the prosecuting attorney of the county where the outstanding charge is pending. The 120 day period begins when a prosecuting attorney receives the prisoner's request. When the Skagit County prosecuting attorney received Peeler's request, the request did not provide accurate notice of Peeler's place of imprisonment, and the certificate of inmate status was not completed by the superintendent with custody of Peeler. The request failed to commence the 120 day period. Peeler's second request was effective, and Peeler was timely brought to trial on the Skagit County charge pursuant to the request. I would reverse the Court of Appeals and remand this case to the Court of Appeals to resolve Peeler's unresolved claims. I respectfully dissent.

13

Fairhurst, J.

Yu, J.

González, J.

Madsen, C.J.

14